AMELIA J. DOUGAN *vs.* THE TOWN OF GREENWICH.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action of trespass *qu. cl. fr.* the defendant, a town, sought to justify its entry, upon the ground that the *locus* was a public dock or landing-place. *Held* that proof of a dedication and acceptance of the land to and for such a public use, and the continuance of such user, was sufficient, without proving a title in the town in its corporate capacity.

Ancient deeds of land embracing that in dispute, contained exceptions of a " convenient landing-place." *Held* that in order to constitute a dedication it was not necessary that the deeds should expressly state that such exceptions were for the benefit of the public; that dedication and acceptance were questions of fact for the determination of the trial court, not only upon the language of the deeds, but from the acts of the parties, the use made of the land, and other circumstances.

The exceptions also included " a highway to go to said landing-place." *Held* that this indicated that the landing-place excepted was for the public use.

In 1887 the town accepted a quitclaim deed from the plaintiff of land adjoining that in dispute. *Held* that such acceptance was not an admission of the plaintiff's ownership of the land in controversy.

Argued November 4th—decided December 16th, 1904.

ACTION in the nature of trespass *qu. cl. fr.*, brought to and tried by the Court of Common Pleas in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*John C. Chamberlain*, for the appellant (plaintiff).

*Wilbur S. Wright*, for the appellee (defendant).

HALL, J.  The complaint alleges that the defendant, by its servants, unlawfully entered upon a described tract of land belonging to and in the possession of the plaintiff, and deposited stones and other material thereon.

The tract in dispute is the easterly end of a dock or landing-place on the north side and near the mouth of Horseneck Brook, which is a cove or creek extending east and west and emptying into Greenwich harbor, known as Bush harbor.  Adjoining the landing-place on the north is a highway running east and west, and which, as it extends easterly of the dock, is in contact with the waters of Bush harbor.  In 1887 a road and bridge, without a draw, called the shore road, was constructed across Horseneck Brook and the dock, connecting with the highway north of the dock, and dividing the dock or landing-place into two parts, both of which are embraced in the land described in the complaint.  The plaintiff at that time deeded to the town by quitclaim deed the land covered by said road and bridge where it crosses the brook and landing-place.

The defendant by its answer admits the ownership and possession of the plaintiff, at the time of the alleged trespass, in that part of the landing-place described in the complaint lying west of the shore road, and denies the allegation of ownership and possession of the part east of the shore road.  By the second paragraph of its answer, the defendant alleges that the landing-place east of the shore road was a public dock, and that the defendant lawfully entered upon it and deposited said stone and material for the repair of the dock.

In the year 1715 John How conveyed to Thomas Johnson, land north of Horseneck Brook at its mouth, bounding it "southerly by the cove or creek and Horseneck Brook," and with this provision in the deed : "always provided that there is a convenient landing-place accepted, and a highway

to go on the north side of Horseneck Brook to said landing-place." On January 15th, 1716, at a town-meeting in Greenwich, three men were appointed "to lay out the landing and highway on the north side of Horseneck Brook," and Justice Bush was given the privilege of setting up a storehouse on said landing. This storehouse was afterwards erected on that part of the landing west of said shore road. July 6th, 1716, Thomas Johnson conveyed to Justice Bush land bounded "southerly by the cove or creek and Horseneck, . . . provided that there is a convenient landing-place excepted and a highway to go to the north side of Horseneck Brook to the said landing-place." March 1st, 1724–5, Justice Bush conveyed to his son Justice Bush land bounded "southerly by the landing and a highway"; the highway here referred to being that above described as adjoining the landing-place on the north. December 22d, 1724, at a town-meeting at Greenwich, liberty was granted Daniel Smith "to build a wharf at the mouth of Horseneck Brook at the landing there for the use of the town."

It is found that the landing-place has remained unenclosed adjoining the highway on the north; that during the entire period within the memory of elderly men it has been to some extent used as a public landing-place; that it was dedicated to a public use and was accepted by the public; that it has not been abandoned by the public; and that the premises in dispute on the east side of the shore road are a part of such landing-place.

As showing title in the plaintiff, these facts are found: In 1883 the plaintiff inherited from her mother, Eleanor R. Davis, property which, by the description in the inventory of her estate, included the tract lying north of Horseneck Brook at its mouth. Eleanor R. Davis derived her title in 1879 from her husband, Abraham B. Davis, the inventory of whose estate included the same property. Abraham B. Davis' title was by deed in 1853 from Silas Davis of land north of Horseneck Brook, at its mouth, "with the dock and all the privileges thereto belonging." Silas Davis in 1840 received a deed from Walter Davis containing the

same language. Walter Davis' title was by deed in 1832 from Rebecca Cosine containing the same provision. Rebecca Cosine's title was by will of her father, William Bush, in 1802, the inventory of whose estate describes "mill and dam, stores and dock, with the privileges of the stream." A mill formerly stood between Horseneck Brook and the road north of the landing extending westerly.

It appears that in several of the years from 1859 to 1879 there were items in the tax list of A. B. Davis intended to cover said landing-place. It does not appear that since 1879 the landing-place has been put in the tax list, excepting that it was placed in the plaintiff's list by the assessors for the years from 1893 to 1897, as "building and dock south of road, $1,000." Since 1853 the plaintiff and her mother and father have claimed to own the landing-place, have at times collected wharfage for its use, have forbidden persons from using it, and have repaired the west part of it, on which the storehouse which they used stood; but neither the plaintiff nor her predecessors in title have ever been in the exclusive possession of the landing-place.

As the trial court does not appear to have ruled upon the question of the burden of proof, but to have expressly found that the place in question was a public landing, we pass, without discussion, the plaintiff's claim as to the burden of proof, but without intending to imply that, under the pleadings denying both her title to and possession of the *locus*, she was not required to prove either title or possession at the time of the alleged trespass.

To sustain the averments of the answer, it was not necessary for the defendant to prove a title in the town in its corporate capacity to the land in dispute. A conveyance or reservation to the town, as such, was not necessary to constitute a dedication to the public. If the land had been conveyed to the town as a public landing-place, the town would have held it only as a representative of the public. *Derby* v. *Alling*, 40 Conn. 410, 438. The answer does not allege ownership in the town, but that the *locus* " was a public dock and landing-place," and such alleged right of the pub-

lic to so use the dock was established by proof of a dedication of the land to such public use, an acceptance of it for such purpose, and that it had not been abandoned or discontinued as such public landing-place. The word " accepted " in the deed of How to Johnson in 1715, was evidently used for the word " excepted," employed in place of it in the deed of 1716 from Johnson to Bush. To render the exceptions contained in these two deeds a dedication to a public use, it was not necessary that it should be expressly stated in the deeds that such exceptions were for the benefit of the public. The question of dedication to and acceptance by the public were questions of fact to be determined by the trial court, not only from the language of these deeds, but from the acts of the parties, the use of the land, and other circumstances. *Hartford* v. *New York & N. E. R. Co.*, 59 Conn. 250, 255. The fact that a highway to the landing-place, as well as a place for the landing-place, was excepted in these deeds, indicates that the landing-place excepted was for the public use. *Burrows* v. *Gallup*, 32 Conn. 493, 499. The provisions in these deeds, the subsequent action of the town directing the layout of the highway and landing-place, and the manner of its use; the fact that thereafter, and as early as 1724, a highway existed along the north side of the landing-place, which Justice Bush in his deed to his son in 1824 makes, with the landing-place, his southern boundary, instead of the cove and Horseneck Brook as his predecessors had done, together with the fact that the public have used the land south of the highway, as found by the court, are sufficient to justify the conclusion that land on both sides of the new highway and bridge, called the shore road, was included in the landing-place as it was originally dedicated, accepted and laid out for the use of the public, and that there has since been no abandonment of that part of the landing-place east of said shore road.

The acceptance in 1887 of the quitclaim deed from the plaintiff, of the land covered by the shore road and bridge, was not an admission of plaintiff's ownership of the landing east of the bridge. The plaintiff and her predecessors may

have acquired a title to the westerly portion of the landing which they had not to the easterly part.

From the evidence before us we find no reason for correcting the finding as requested.

There is no error.

In this opinion the other judges concurred.