[S. F. No. 12432.   In Bank.—June 2, 1927.]

JOHN F. SLAVICH, in Behalf of Certain Associations and Individual Members Thereof, et al., Petitioners, v. WILLIAM J. HAMILTON, Acting Chairman of the Board of Supervisors of the County of Alameda, Respondent.

[1] MUNICIPAL CORPORATIONS — ERECTION OF VETERANS' MEMORIAL HALL—EXECUTION OF CONTRACT—REFUSAL OF CHAIRMAN OF BOARD OF SUPERVISORS—MANDAMUS.—*Mandamus* is the proper remedy to compel the chairman of the board of supervisors of Alameda County to formally execute a contract, duly awarded by the board under public bid, for the erection of a veterans' memorial hall and building, and to enter into a lease with the city of Oakland of the property to be used as a site for the proposed structure, as the facts present a case of a public officer refusing to perform a ministerial duty involving no discretion.

[2] ID.—PUBLIC PURPOSE.—A veterans' memorial hall erected for the purpose of stimulating and promoting patriotism and to provide meeting places and memorial halls for patriotic associations and their members to the extent that it serves as a stimulus to patriotism is for a public purpose.

[3] ID. — PUBLIC PARKS — USE OF LAND OF. — Land which has been dedicated as a public park must be used in conformity with the terms of the dedication, and it is without the power of a municipality to divert or withdraw the land from use for park purposes; and whether a designated purpose is consistent or inconsistent with park purposes depends upon the particular circumstances of the case.

[4] ID. — USES OF PARK PROPERTY—DETERMINATION OF.—The uses to which park property may be devoted depend, to some extent upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality; and a different construction is placed upon dedications made by individuals than those made by the public, the former being construed strictly according to terms of the grant, while in the latter cases a less strict construction is adopted.

[5] ID. — CONSTRUCTION OF GRANT—INTENTION.—The intention of the grantors of property is to be gathered from a consideration

1.  See 18 R. C. L. 116; 16 Cal. Jur. 804.
3.  Uses to which park property may be devoted, note, 18 A. L. R. 1246.   Erection of buildings in public parks, notes, 11 Ann. Cas. 468; 21 Ann. Cas. 141; Ann. Cas. 1918E, 489.   See, also, 20 Cal. Jur. 464.
4.  See 20 R. C. L. 651; 20 Cal. Jur. 466.

of the entire instrument of conveyance, although the immediate object of inquiry is the meaning of an isolated clause; and the facts and circumstances surrounding the conveyance of property for public purposes may be looked to for a solution of the question as to whether a certain purpose comes within the object of the grant, and, when a deed is but one of the circumstances surrounding an implied dedication, all the other circumstances may be considered together with the deed, and the implication, if any, is an implication of fact.

[6] ID.—DEDICATION—PARKS.—It is held in this case that the facts and circumstances surrounding the transaction involving the deed in question show an express intention on the part of the donors to dedicate the property conveyed to the city of Oakland for park purposes.

[7] ID. — DEED OR CONTRACT — INDEFINITE TERMS — CONSTRUCTION BY PARTIES.—It is well settled that a deed or contract indefinite in terms may be made definite and certain by the practical construction of the parties to it.

[8] ID.—DEDICATION FOR PARK PURPOSES—PUBLIC PROPERTY.—If by the acts of the owners, whether express or implied, the dedication of property for park purposes is complete, the dedication thereafter is irrevocable by them and cannot be qualified by any act or declaration thereafter made on their part, as the property has become public property.

[9] ID. — USE OF PARK FOR MEMORIAL HALL — USE CONSISTENT WITH DEDICATION.—The use by a municipality of land dedicated for park purposes for the erection thereon of a veterans' memorial hall primarily as a meeting place and memorial hall for organizations whose membership is composed of soldiers, sailors, and marines who have served the United States of America honorably in any of its wars is consistent with the purpose of the dedication where the lease of the site will occupy only the land actually covered by the building, a minor part of the park, and the remainder of the so-called "site," in common with the rest of the park property, will be devoted to lawns, flowers, shrubs, and will otherwise be conducted in the manner usual to the maintaining of the park, the building adding to the beauty and attractiveness of the park and forming a conspicuous and magnificent monument to the cause of patriotism and sacrifices of those who have fought and died in the wars of the United States.

(1) 38 C. J., p. 745, n. 89.　(2) 32 Cyc., p. 1251, n. 30.　(3) 18 C. J., p. 127, n. 68; 23 C. J., p. 59, n. 22.　(4) 18 C. J., p. 109, n. 5 New.　(5) 18 C. J., p. 109, n. 1, p. 258, n. 80.　(6) 18 C. J., p. 109, n. 1.　(7) 18 C. J., p. 262, n. 57.　(8) 18 C. J., p. 128, n. 75.　(9) 18 C. J., p. 130, n. 46 New.

6. See 8 R. C. L. 1037.

APPLICATION for a Writ of Mandate to compel the chairman of the Board of Supervisors of Alameda County to execute a contract for the erection of a Veterans' Memorial Hall and to enter into a lease of the property used therefor.    Writ granted.

The facts are stated in the opinion of the court.

Markell C. Baer and Breed, Burpee & Robinson for Petitioner.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and Frank M. Ogden, Deputy District Attorney, for Respondent.

WASTE, C. J.—Application has been made on behalf of the members of the Grand Army of the Republic, the Veterans of Foreign Wars, the American Legion, and other patriotic organizations of the City of Oakland, and the city itself, for the issuance of a writ of mandate to compel the respondent, as chairman of the board of supervisors of Alameda County, to formally execute a contract, duly awarded by the board under public bid, for the erection of a veterans' memorial hall and building, and to enter into a lease with the city of the property to be used as a site for the proposed structure. [1] The facts present a case of a public officer refusing to perform a ministerial duty involving no discretion, and *mandamus* is the proper remedy. (*Williams* v. *City of Stockton,* 195 Cal. 743 [235 Pac. 989].) The necessary parties are before the court, and they have agreed to submit as the sole question presented by the application, and as one of law to be determined on the demurrer to the petition, whether or not land given to the city for and dedicated to and used for park purposes may properly be appropriated as a site for a memorial building.

The proposed veterans' memorial building is one of a number of like buildings and halls which the county of Alameda has undertaken to erect at various places in the county for the purpose of stimulating and promoting patriotism, and to provide meeting places and memorial halls for patriotic associations and their members throughout the

county, and particularly in cities wherein they may be located. There is, in the City of Oakland, separated from Lakeside Park and Lake Merritt by Grand Avenue, a parcel of land which was deeded to the city by Edson F. Adams, John Charles Adams, and Julia P. A. Prather, and which was converted by the grantors into a park. The city, by resolution of the council, accepted the gift, designated the property as "Adams Park," and has since maintained it as part of the general park system of the city.

Adams Park was selected as a suitable location for the Oakland memorial building. The board of supervisors of Alameda County, the council of the City of Oakland, the Oakland planning commission, and the board of park directors of the city approved the location and the erection of the building on the site chosen. Pursuant to the provisions of the Oakland city charter, the council invited proposals for the leasing of as much of the park property as is required for the site of the building, for a period of twenty-five years. The county of Alameda made the highest bid, and the council thereupon, by ordinance, authorized a lease of the property, which was executed by the city through its board of park directors, and accepted by the county. In the meantime, the board of supervisors of the county took legal steps for the erection of a suitable memorial building on the site, at a cost of approximately $250,000, and authorized the execution of the necessary building contract. The chairman of the board refused to authenticate and execute the lease, or to enter into the contract. **[2, 3]** He wholeheartedly concedes that a veterans' memorial hall, such as is here contemplated, would serve a noble, patriotic cause, and admits, as held by this court in *Allied Architects Assn.* v. *Payne,* 192 Cal. 431, 435 [30 A. L. R. 1029, 221 Pac. 209], that the erection of such a building, to the extent that it would serve as a stimulus to patriotism, would be for a public purpose, but, in justification of his position, relies upon the well-settled principle of law that land which has been dedicated as a public park must be used in conformity with the terms of the dedication, and it is without the power of a municipality to divert or withdraw the land from use for park purposes. (*Archer* v. *Salinas City,* 93 Cal. 43, 51 [16 L. R. A. 145, 28 Pac. 839]; *Mulvey* v. *Wangenheim,* 23 Cal. App. 268 [137 Pac. 1106].)

There can be no dispute as to the general rule relied upon by the respondent, but the real question seems to be whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with park purposes. It is a matter of public knowledge that the erection of hotels, restaurants, museums, art galleries, zoological and botanical gardens, conservatories, and the like, in public parks is common. (*Spires* v. *City of Los Angeles*, 150 Cal. 64, 66 [11 Ann. Cas. 465, 87 Pac. 1026].) The court was not, at the time that case was before it, nor has it since been, "pointed to any authority where it has been regarded as a diversion of the legitimate uses of the park to establish them, but, on the contrary, their establishment has been generally recognized as ancillary to the complete enjoyment by the public of the property set apart for their benefit."

[4] The uses to which park property may be devoted depend, to some extent, upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality. A different construction is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted. (*Harter* v. *San Jose*, 141 Cal. 659 [75 Pac. 344]; *Spires* v. *City of Los Angeles*, *supra*.) In the Harter case it was held that the use of a small portion of a park of several hundred acres, for hotel purposes, in such a way as not to in any manner restrict or interfere with the free use of the park by the public, the lease being for the evident benefit of the public, was not a use of the property inconsistent with its public character. In the Spires case, *supra*, it was held that the erection of a building for a public library in a public park was a legitimate use of a portion of the property, but that the use of the building for other municipal purposes would amount to a diversion from the use to which the property was dedicated. In neither of these cases was dedication made by a private individual for a specific purpose. The property here in question was conveyed to the City of Oakland by a deed of the donors made in the year 1899. The instrument purports to remise, release, and forever quitclaim to the City of Oakland two pieces of property, which may be referred to as "parcel one" and "parcel

two." Parcel one lies south of Grand Avenue, and borders on Lake Merritt, part of it apparently being salt marsh at the time it was given to the city. The description in the deed of parcel one is followed by the declaration that "conveyance is made only upon the express condition, that said property shall be used forever for the purpose of a public Water Park, and said property shall be entirely dredged up to the line of the property of the parties of the first part on the southeast, so that the same shall abut upon said water park." Then followed the description of parcel two, which is the present "Adams Park" property, and which includes the proposed site of the memorial building. After acceptance of the property, the city dredged parcel one to conform to the requirements of the deed of gift.

We must agree with the respondent that the clause in the deed to the effect that the conveyance is made upon the express condition that the property shall be used forever as a public water park, although inserted immediately following the description of parcel one, and immediately preceding the description of the parcel including the land here in question, does not in any way indicate, except possibly by virtue of its position in the deed, that the restriction as to the use of the property "for the purpose of a public water park" was limited to the first parcel of land. The deed, by its recitals, purports to convey to the city "all those certain lots, pieces or parcels of land . . . bounded and particularly described as follows, to wit": and the *habendum* clause provides that the premises, which refer, of course, to both parcels, are to be held "upon the conditions hereinbefore [in the deed] set forth." Parcel two is directly opposite the northerly shore of and faces Lake Merritt. But for the location of Grand Avenue, it would abut on the lake and on parcel one. [5] The intention of the grantors is to be gathered from a consideration of the entire instrument of conveyance, although the immediate object of inquiry is the meaning of an isolated clause. (*Coon* v. *Sonoma Magnesite Co.,* 182 Cal. 597, 600 [189 Pac. 271]; 9 Cal. Jur. 255.) The facts and circumstances surrounding the transaction may be looked to for a solution of the question, and, when a deed is but one of the circumstances surrounding an implied dedication, all the other circumstances may be considered together with the deed, and the implication, if any, is an

implication of fact. (*Dougan* v. *Greenwich,* 77 Conn. 444 [59 Atl. 505]; *Mayor of Baltimore* v. *Northern etc. Ry. Co.,* 88 Md. 427 [41 Atl. 911].) [6] The facts and circumstances surrounding the transaction involving the deed here appear to show very clearly an express intention on the part of the donors to dedicate the property to the City of Oakland for park purposes. Some four and a half years after the acceptance of the deed to the property and its recordation by the City of Oakland, the city council, referring to parcel two, adopted a resolution which seems so pertinent here that we recite it in full, to wit:

"Whereas, A parcel of land located at Grand avenue and Montecito avenue was dedicated to the city by Edson F. Adams, John Chas. Adams and Julia P. A. Prather on January 12, 1899; and

"Whereas, The grantors of said land have converted the grounds into a beautiful park, adorned with a conservatory, containing potted plants, tropical trees, etc.; and

"Whereas, Edson F. Adams, John Chas. Adams and Julia P. A. Prather on July 13, 1903, donated to the city said conservatory with plants, tools and implements.

"Resolved, That the thanks of this council, on behalf of the City of Oakland, be extended to the generous donors for their gift; and be it further

"Resolved, That said park be and it is hereby designated and shall be known as Adams Park."

[7] It is, of course, well settled that a deed or contract indefinite in terms may be made definite and certain by the practical construction of the parties to it. (*Grant* v. *Bannister,* 160 Cal. 774, 780 [118 Pac. 253].) We are satisfied that the acts of the parties, in full accord with their intention, amounted to a complete dedication of the land, referred to as parcel two, to public use for park purposes.

Petitioners claim that, even though it may have been the intention of the grantors of the Adams Park property to dedicate it to the city for park purposes, the restrictions imposed by the original conveyance have been released by reason of the fact that, as a precautionary measure, and for the apparent purpose of forestalling any question as to what was intended by the original deed, the successors in interest of the original grantors have executed an instrument in writing, by which they purport to "give, grant,

201 Cal.—20

alien and confirm unto the [City of Oakland] and to its assigns and successors forever, the right and privilege to erect or cause to be erected for the County of Alameda, upon said public park, such memorial hall as the council of the City of Oakland may deem fitting." **[8]** But, if the dedication of the property for park purposes was complete in the first instance, the property thereby became public property, and the owners lost all control over it. If the dedication was complete by their acts, whether express or implied, it was thereafter irrevocable by them, and the effect of such dedication cannot be qualified by any act or declaration thereafter made on their part. The property dedicated has become public property, impressed with the use for which it was dedicated. (*Archer* v. *Salinas, supra.*) Then, again, the City of Oakland had the power to irrevocably dedicate the Adams Park property for park purposes, and we are satisfied that it has done so. (*Harter* v. *San Jose, supra.*)

**[9]** The immediate question, therefore, to be determined is whether the purpose for which it is now desired to lease a part of the property to the County of Alameda for twenty-five years is consistent with such dedication. The building proposed to be erected, according to the petitioners, will "be used primarily as a meeting place and memorial hall for organizations whose membership is composed of soldiers, sailors and marines who have served the United States of America honorably in any of its wars." While it is well settled that the erection of such a building is for public purposes (*Allied Architects Assn.* v. *Payne, supra; Barrow* v. *Bradley,* 190 Ky. 480 [227 S. W. 1016]; *Kingman* v. *Brockton,* 153 Mass. 255 [11 L. R. A. 123, 26 N. E. 998]; *Hill* v. *Roberts,* 142 Tenn. 215, 217 S. W. 826]), it does not necessarily follow that the use of the land on which it is to be located is consistent with the purposes for which the park was dedicated. A use for a public purpose may be utterly inconsistent with a use for park purposes. Under the well-settled principle of law generally applicable, if the city were undertaking to establish in Adams Park a city hall, fire-engine station, hospital, or jail, endeavoring to devote the property to the erection of municipal buildings or offices for use in the transaction of public business, we would have little hesitancy in saying that such purposes

would be entirely inconsistent with the use of the property
for park purposes. (*Spires* v. *City of Los Angeles, supra,*
p. 67.) In this connection, petitioners contend that the City
of Oakland is not subject to the general rule. Section 65
of the charter of the city (Stats. 1909, p. 1322; Stats. 1925,
p. 1416) provides that the board of park directors of the city
shall have the complete and exclusive control, management, and
direction of parks, squares and grounds within the city,
and shall have the exclusive right to erect and superintend
the erection of buildings and structures thereon pertaining
to park purposes, subject to the provision that the city
council "may erect or cause to be erected any municipal
building or buildings thereon." Under this provision, it
would seem that the City of Oakland has the undoubted
right to construct any kind of a municipal building on park
property. Whether such a building as is here contemplated
is, or is not, a municipal building does not need to be de-
cided, for we have reached the conclusion that the use of
a part of the Adams Park property for a veterans' memorial
hall, under the restrictions placed by the city upon its
construction and use, is not a use inconsistent with park
purposes.

By the express terms of the lease, the "premises shall be
used exclusively for the erection and maintenance" of the
veterans' memorial hall. When the hall is completed, the
lease of the site, according to its terms, will cover only the
land actually occupied by the building—a minor part of
Adams Park. The remainder of the so-called "site," in
common with the rest of the park property, will be devoted
to lawns, flowers, and shrubs, and otherwise conducted in
the manner usual to the maintaining of the park. The
proposed Veterans' Memorial Hall, "of a beautiful orna-
mental and architectural design," will face Grand Avenue,
the water park maintained by the city, known as Lake
Merritt, and the public park surrounding it, known as Lake-
side Park, which consists of more than 230 acres of land.
It will be visible from a large part of the shore lines of
the lake and the public streets, avenues, and parks sur-
rounding it, "thereby," according to the petition, "adding
greatly to the beauty and attractiveness of the City of
Oakland and forming a conspicuous and magnificent monu-
ment to the cause of patriotism and sacrifices of those who

have fought and died in the wars of the United States."
In casting about for a suitable location whereon to erect the
memorial hall, the Oakland city planning commission, the
city council, and the board of park directors acted jointly
and in harmony. The planning commission "being fully
advised in the premises," approved and ratified the "selec-
tion of the said Adams Park for the proposed memorial hall,
as being fully in accord with the future development and
beautification of the City of Oakland in respect to Lake
Merritt and its environs and in keeping with the public
purpose of the Lake Merritt system of parks." The city
council, in the resolution approving the selection of the
site, recited that "a veterans' memorial hall erected upon
the said Adams Park would most fittingly serve the munici-
pal and public purposes manifested in its construction,
would be centrally located and conveniently accessible to
the greater number of veterans and, as a monument sym-
bolic of the soldiers' spirit of sacrifice, would greatly add
to and enhance the beauty and attractiveness of the shores
of Lake Merritt as a public park." The resolution of the
city council awarding the lease to the county of Alameda,
and directing its execution, provides that the building shall
be so constructed, according to plans and specifications
approved by the city council and the park commission, as
to conform to the general objects and purposes for which
the land is held. The board of park directors of the city
shall have the right to enter at all times upon the premises so
leased, and the building shall be used for park pleasure pur-
poses only. While any effort on the part of those interested
to escape from the imposition of restrictions and limitations
placed upon the property dedicated to the city for park
purposes only would be futile, if an intended use would, in
effect, be a diversion from the uses and purposes for which
the property was dedicated, it definitely appears, in the
instant case, that the intention has been to keep the use
of the property within due bounds with regard to its use
for park purposes. The erection of monuments and memo-
rials in public parks has long been recognized as a use con-
sistent with park purposes. (*Braham* v. *Meridian,* 111 Miss.
30 [71 South. 170]; *Parsons* v. *Van Wyck,* 56 App. Div. 329
[67 N. Y. Supp. 1054].) While no case involving the ques-
tion of the use of a public park as a site for a memorial

building has come to our notice, we are of the view that the erection of the Veterans' Memorial Hall, as here proposed, will not interfere with the enjoyment by the community in general of Adams Park, and will not be such a diversion of the property from its use for park purposes as to amount to an invasion of the settled principles of law relied on by the respondent. He should, therefore, execute and authenticate the lease with the City of Oakland. No legal objection being made to appear why the lease should not be entered into, and no contention being made that the contract for the erection of the memorial building authorized by the board of supervisors was in any way illegal, its due execution should also be attested by the respondent.

Let a writ of mandate issue as prayed for.

Preston, J., Langdon, J., Richards, J., Shenk, J., Curtis, J., and Seawell, J., concurred.