[Civ. No. 212.  Fourth Appellate District.—October 20, 1930.]

M. W. VALE et al., Appellants, v. THE CITY OF SAN BERNARDINO (a Municipal Corporation) et al., Respondents.

John L. Campbell and R. E. Bledsoe for Appellants.

Fred A. Wilson, W. E. Byrne and Martin J. Coughlin for Respondents.

BARNARD, J.—This is an action in equity to compel the defendants to remove from a public park in the City of San Bernardino, commonly known as Pioneer Park, a log cabin with additions thereto. The material parts of the deed by which the land in question was acquired by the city read as follows:

"This Indenture, made the thirtieth day of November, in the year of our Lord one thousand eight hundred and seventy-two, between Thaddeus Amat, Bishop of Monterey and Los Angeles, an ecclesiastical corporation sole of the religious persuasion known as the Catholic, party of the first part, and the 'Inhabitants of the Town of San Bernardino' the parties of the second part:
                    "Witnesseth:
"That the said party of the first part, for and in consideration of one dollar to him in hand paid, by the said parties of the second part, the receipt whereof is hereby acknowledged, and the further consideration hereafter specified, has remised, released and by these presents doth remise, release and forever quit claim unto the said parties of the second part, and to their successors, all that certain lot, piece or parcel of land situate, lying and being in the Town of San Bernardino, County of San Bernardino, State of California, and bounded and particularly described as follows, to-wit:" (here follows description of property, containing 5.12 acres) "Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well

in law as in equity, of the said party of the first part, of in or to the said premises, and every part and parcel thereof, with the appurtenances. To have and to hold, all and singular the said premises, together with the appurtenances unto the said parties of the second part and to their successors forever.

"And for a further consideration binding upon the parties of the second part, and this conveyance is made upon the express consideration, that the premises hereby conveyed, shall be and remain forever a public plaza or square for the use and enjoyment of the parties of the second part and their successors—this conveyance revokable should other disposition be made of said premises."

The complaint alleges that on or about July 1, 1911, and since, the defendant City, by and through its Mayor and Common Council, in violation of the trust created by the said deed, has permitted private buildings (being the log cabins referred to), to be erected on the premises for private use and not for the use and benefit of all of the inhabitants of the city, and has permitted the San Bernardino Society of California Pioneers and the Golden State Club to occupy the same to the entire exclusion of all other societies and all other persons. Also, that the Mayor and Common Council have neglected and refused to comply with a request that said buildings be removed. The plaintiffs ask for an order compelling the specific execution of said trust, by directing the removal of the buildings in question. After an answer was filed a trial was had and at the conclusion of plaintiffs' evidence a motion for nonsuit was made, which was later granted by the court. The order of nonsuit was entered upon the minutes of the court, and is herein treated as a judgment of nonsuit. (Code Civ. Proc., sec. 581; *Brown* v. *Sterling Furniture Co.*, 175 Cal. 563 [166 Pac. 322].) This appeal is from that order.

The respondents contend the order should be affirmed for a number of reasons, including the following: That the notice requesting a reporter's transcript was not filed within the time required by law; that the appellants have failed to set forth in their brief sufficient of the record to justify a reversal; that the plaintiffs have no legal right to maintain such an action; that an adequate remedy exists at law; that by the deed referred to the city became vested with title

to the property in fee simple, without reservations or conditions; and finally, that there is no evidence in the record to show that the buildings or any use made of them violate any park purposes.

We think there is no merit in the first point, and while one or more of the others could not be lightly dismissed, were it necessary to consider them, our views upon the last point raised, which is the meat of this controversy, makes the consideration of the other grounds named unnecessary. Assuming that the action may otherwise be maintained and that the property in question was restricted by the above deed to use for park purposes only, we think the evidence, even when viewed in the light most favorable to appellants, shows no diversion from or violation of such use.

The evidence, including stipulations, which is relied on by appellants as showing a use of the property for other than park purposes, is thus summarized in their brief:

''The salient facts thus established, are that with permission of defendant, City of San Bernardino, its Mayor and Common Council, defendants, San Bernardino Society of California Pioneers, and the Golden State Club, erected and placed in Pioneer Park, the premises described in plaintiffs' complaint, the log cabin, with its additions, and that said societies at the commencement of this action were occupying the same; that said defendants are associations which embrace members only possessing certain qualifications, set forth in their respective constitutions, and by-laws; that said defendants have absolute control of the management and conducting of their respective meetings which are held in the cabin in said park; that the members of said Golden State Club pay dues or some sum as membership fees; that plaintiffs requested said City and Common Council to remove said cabins; but that they have wholly neglected and refused to comply with such request. As might have a bearing upon the issue involved, it will be noted—that it further stipulated that the only buildings upon this grounds, are said log cabins, and the Auditorium, the latter not involved in this case.''

The only other such evidence which is called to our attention by appellants is a request signed by more than fifty citizen pioneers, including all of the plaintiffs, addressed to the San Bernardino Society of California Pioneers asking

permission to use the log cabin in question for one night a week. In their reply as shown by the record, said society denied permission to use the building "for the purpose of organizing a rival Pioneer Society", for the reason that "the old pioneers concluded, after discussing the matter, that the granting of such application would lead to dissension instead of harmony among the pioneers". This reply then proceeds to disclaim any intention of depriving any pioneers of the use of the cabin; expresses regret that the signers of the petition have seen fit to refrain from participating in the use thereof; urges the lack of any good reason to justify the organization of a rival or second pioneer society; and invites the petitioners to return and use the premises, not only one evening a week, but every evening and every day.

It also appears from the record that in addition to its use by the Pioneer Society and the Golden State Club, respondents herein, the log cabin in question is also used by the Grand Army of the Republic, the Women's Relief Corps and the Spanish American War Veterans. It appears that the Pioneer Society and the Golden State Club are affiliated organizations and that their objects, in addition to benevolent and social purposes, are to collect and preserve information and facts in connection with the early settlement and history of California, especially of San Bernardino County; to form libraries and cabinets; to provide for a memorial hall to perpetuate the memory of the early pioneers; and that their membership is limited to early settlers and their descendants. It further appears that they have no password; that their meetings are not secret, but are open to the public at all times; that any person may take part in such meetings even to the extent of making a speech; and that even at times when the building is not open, it will be opened, upon request, for the pleasure of anyone desiring to visit it.

The rule is that where land is dedicated as a public park it must be so used, and not diverted to other and different purposes. (*Slavich* v. *Hamilton*, 201 Cal. 299 [257 Pac. 60].) On the other hand, the use of such land for buildings or purposes which are incidental to its use as a public park will be upheld. (*Hall* v. *Fairchild-Gilmore-Wilton Co.*, 66 Cal. App. 615 [227 Pac. 649].) In *Slavich* v. *Hamilton*, *supra*, the court said:

"It is a matter of public knowledge that the erection of hotels, restaurants, museums, art galleries, zoological and botanical gardens, conservatories, and the like, in public parks is common. (*Spires* v. *City of Los Angeles,* 150 Cal. 64, 66 [11 Ann. Cas. 465, 87 Pac. 1026].) The court was not, at the time that case was before it nor has it since been, 'pointed to any authority where it has been regarded as a diversion of the legitimate uses of the park to establish them, but, on the contrary, their establishment has been generally recognized as ancillary to the complete enjoyment by the public of the property set apart for their benefit'."

In the case just cited it was sought to erect a veterans' memorial building upon land which had been given to the city of Oakland by private individuals for use as a public park, and which had been further dedicated to such use and purposes by the city. The proposed building was to "be used primarily as a meeting place and memorial hall for organizations whose membership is composed of soldiers, sailors and marines who have served the United States of America honorably in any of its wars", it being contemplated that it would be used by the Grand Army of the Republic, and Veterans of Foreign Wars, the American Legion and other patriotic organizations. The court held that this intended use was not only a public use, but was one consistent with the park purposes to which the land had been dedicated, the court using this language:

"The erection of monuments and memorials in public parks has long been recognized as a use consistent with park purposes. (*Brahan* v. *Meridian,* 111 Miss. 30 [71 South. 170]; *Parsons* v. *Van Wyck,* 56 App. Div. 329 [67 N. Y. Supp. 1054].) While no case involving the question of the use of a public park as a site for a memorial building has come to our notice, we are of the view that the erection of the Veterans' Memorial Hall, as here proposed, will not interfere with the enjoyment by the community in general of Adams Park, and will not be such a diversion of the property from its use for Park purposes as to amount to an invasion of the settled principles of law relied on by the respondent."

In the instant case, the log cabin in question has been used for many years; it is a replica of a typical pioneer home and in itself constitutes an exhibit commemorative of

pioneer days, fully equal in historical, inspirational and educational value to a good many exhibits in museums which are recognized as a legitimate part of a public park. It constitutes both a monument and a memorial, which have a fitting place in a public park. It is used by organizations which are contributing to the laudable purpose of promoting and stimulating patriotism, and which are of exactly the same style as those for which the building referred to in *Slavich* v. *Hamilton* was intended. It not only furnishes a meeting place for a number of such patriotic organizations, but the particular organizations whose use of the building is here objected to, have the additional object and purpose of collecting and preserving historical information and facts in connection with the history of California, of forming libraries and cabinets, and perpetuating the memories of the early pioneers. Such collections, exhibits, libraries and memorials are not uncommon in public parks and often constitute the most attractive feature therein, to a large part of the public. It further appears from the evidence that the building, with all its facilities, even including such meetings and dances as are given by the organizations fostering and maintaining the same, is as much open to the public at all times as to any members of these organizations, and that even at such times as the building may be closed, it will be opened to anyone, upon request. To our minds this shows neither a diversion of the property from park purposes, nor such an exclusive use thereof as could be held to interfere with the full and free public use which is contemplated by law. (*Slavich* v. *Hamilton, supra; Spires* v. *City of Los Angeles, supra; Harter* v. *San Jose,* 141 Cal. 659 [75 Pac. 344].)

All of the appellants were formerly members of the organizations here complained of and, as such, participated in the alleged improper use of the park. The filing of this action followed the refusal of these organizations to permit the appellants and others to assume the same occupation and control of the premises at certain stated times. Whether other organizations should also be allowed to hold meetings in the building in dispute is another question, depending upon many things, and not involved here. We think, however, that the mere fact that such permission is denied to another body by one already allowed to meet in the building

is not, in itself, sufficient to establish that the latter organization is not lawfully using the premises.

■ Nor do we think the use of the premises for park purposes is affected because, as appears, the respondent associations have control of the management and conduct of their meetings. It would hardly be held that a lawful use of a veterans' memorial building in a city park for meetings of the American Legion became an unlawful use if that body exercised control over its own meetings. Restaurants, libraries, museums and various other concessions, even including hotels, have been held proper in public parks, when not inconsistent with general park purposes, but it seems apparent that all such accessories have to be controlled by someone and carefully managed. Parks are often used for public meetings, but the fact that such meetings are and must be promoted, managed and conducted by some authority, usually some organization, does not even indicate that such use of a park is not a public one. To permit to such organizations as may lawfully be allowed to meet in a building standing upon park property, the control and management of meetings that are open to the public, certainly does not change the use of the property from a public to a private one.

■ The evidence having failed to show any use of the property in question inconsistent or contrary to its use as a public plaza or park, under the established rules of law, the motion for a nonsuit was properly granted.

The order appealed from is affirmed.

Cary, P. J., and Marks, J., concurred.