TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-107 |
| of | : | |
| | : | June 8, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MIKE THOMPSON, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a portion of land dedicated for park and recreational uses pursuant to a final subdivision map and developed for park uses be leased by a city to a school district for purposes of constructing a school, library, media center, gymnasium, swimming pool, day care center, and other community recreational facilities to be jointly operated by the city and the district?

CONCLUSION

A portion of land dedicated for park and recreational uses pursuant to a final subdivision map and developed for park uses may not be leased by a city to a school district for purposes of constructing a school, but may be leased for other uses which are consistent with park and recreational purposes.

ANALYSIS

A general law city and a school district intend to enter into a 55-year lease of a portion of land which was originally dedicated by a subdivision developer for park and recreational purposes. The city is the successor in interest to a county water district which received the land from the developer when the final subdivision map was recorded. Basic improvements to the park have been made by the developer and by the county water district.

Under the terms of the proposed lease, a middle school and various community facilities, including a library, media center, gymnasium, swimming pool, and day care center would be constructed on the site, which is adjacent to an existing elementary school.[1] We are asked to determine whether the proposed lease would be permissible under state law. We conclude that construction of the school buildings would be impermissible but that the land for the other facilities could be leased as long as the uses of those facilities would be consistent with park and recreational purposes.

There is "the well-settled principle of law that land which has been dedicated as a public park must be used in conformity with the terms of the dedication, and it is without the power of a municipality to divert or withdraw the land from use for park purposes." (*Slavich* v. *Hamilton* (1927) 201 Cal. 299, 302.) However, as the court in *Slavich* noted, "the real question seems to be whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with park purposes." (*Id.* at p. 303; see 57 Ops.Cal.Atty.Gen. 348, 349 (1974).)

In determining whether a particular use is consistent with park and recreational purposes, we find that a distinction is drawn between dedications made by private individuals and those made by public agencies. In *Slavich*, the court explained:

"The uses to which park property may be devoted depend, to some extent, upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality. A different construction is placed upon dedications made by individuals from those made by

---

[1] Approximately nine acres of the 22-acre park would be subject to the lease. The district would fund construction of the school classrooms and administration buildings. The city and the district would jointly fund construction of the library, media center, gymnasium, kitchen, and parking. The city would fund the swimming pool, landscaping, and day care center. The facilities would be used primarily for the educational and extra-curricular activities of the district, but would be made available to the general public for community activities and recreational purposes during non-school hours.

the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted." (*Slavich* v. *Hamilton*, *supra*, 201 Cal. at 303.)

A dedication "by the public" occurs when the public entity is already the owner of the property at the time the dedication is made. (See *Spires* v. *City of Los Angeles* (1906) 150 Cal. 64, 66.)

Here the property was offered for dedication as a park by a subdivision developer and was accepted as such by a county water district as part of the subdivision approval process. Since the property was not acquired by condemnation or other public purchase and was not owned by the city at the time the dedication was made, the dedication of the land for park and recreational purposes must be strictly construed. A narrow construction of the developer's dedication is supported by the fact that the purchasers of homes in the subdivision were informed that the land would be developed for park and recreational purposes.

However, as the dedication in question was stated in general terms, we must examine the range of uses which have been found to be consistent with park and recreational purposes. In *Spires* v. *City of Los Angeles*, *supra*, 150 Cal. at 66-67, the court observed:

"As matter of public knowledge, we are aware that the erection of hotels, restaurants, museums, art-galleries, zoological and botanical gardens, conservatories, and the like in public parks is common, and we are not pointed to any authority where it has been regarded as a diversion of the legitimate uses of the park to establish them, but, on the contrary, their establishment has been generally recognized as ancillary to the complete enjoyment by the public of the property set apart for their benefit. For instance, in Central Park in New York City there is a museum of natural history and a metropolitan art museum; and in Golden Gate Park in San Francisco, a museum, children's playground, and buildings used in connection with it, and a conservatory. We mention simply these parks and particular features devoted to the public enjoyment, although many other parks might be mentioned where similar buildings have been erected."



"And that among the buildings which may be erected within a public park in aid of and for the better enjoyment of the public, a public library is included, is settled by authority."

Other facilities which have been found consistent with park purposes include a veteran's memorial hall (*Slavich* v. *Hamilton*, *supra*, 201 Cal. 299), underground parking at a city square (*City and County of San Francisco* v. *Linares* (1940) 16 Cal.2d 441), and a hotel (*Harter* v. *San*

*Jose* (1904) 141 Cal. 659). As was the situation in *Spires*, these uses were allowed where the park dedication was made by a public agency rather than by a private individual. (See *City and County of San Francisco* v. *Linares*, *supra*, 16 Cal.2d at 447; *Slavich* v. *Hamilton*, *supra*, 201 Cal. at 303.) But even under the more relaxed standard of these cases, we find no support for the proposition that a school building would be an appropriate use of property dedicated for park and recreational purposes.

In *Spires* v. *City of Los Angeles*, *supra*, 150 Cal. at 70, the court found that while the city had the right to construct a library in its park, the building could only be used for library purposes and not for other municipal functions such as a meeting place for the city board of education. In *Slavich*, *supra*, 201 Cal. at 306-307, the court reiterated the distinction contained in *Spires* that "if the city were undertaking to establish in [the park] a city hall, fire-engine station, hospital, or jail, endeavoring to devote the property to the erection of municipal buildings or offices for use in the transaction of public business, we would have little hesitancy in saying that such purposes would be entirely inconsistent with the use of the property for park purposes."

More recently in *San Vicente etc. Sch.* v. *County of L. A.* (1956) 147 Cal.App.2d 79, 85, the court stated:

"There is no express authority which permits the use of a public park for a private nursery school. In the absence of such authority a county cannot permit the use of a public park in a manner which will unreasonably impair or interfere with the right of the public to use the park." [Citations.] In *Williams* v. *Gallatin*, 229 N.Y. 248 [128 N.E. 121, 18 A.L.R. 1238], it was said at page 253 (N.Y.): `A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. [Citation.] It need not and should not be a mere field or open space, but no objects, however worthy, such as court houses and school houses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself . . . .'"

Similarly in *City of Salem* v. *Attorney General* (1962) 183 N.E.2d 859, it was held that land donated to a city for use as "public grounds" could not be properly used as the site for a school building. The city council's acceptance of the grant of land for use by its citizens was deemed to constitute a contract between the donor and the city. (*Id.*, at p. 862.) The court reasoned that a public park normally is an open space maintained for the recreation and pleasure of the general public and that the use of three acres of the 21-acre park for construction of a public school would be inconsistent with the use for which the city held the land under the grant from the donor. (*Ibid.*)

Here we recognize that construction of a middle school in a park adjacent to an existing elementary school would have the benefit of concentrating school and community related activities and would result in the addition of various recreational amenities which could be made available to the general public on a subordinate basis. (See *Associated Home Builders* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 646-647, fn. 16.) However, to the extent that the existing park property would be converted to the exclusive use of the school, it would be unavailable to the general public for park and recreational purposes. The school itself may not be considered a recreational facility, having as its function the public education of school children. Moreover, the diminution of park space and increased traffic resulting from the school's presence would be at odds with a dedication of land largely meant to offset the loss of open space and to mitigate the effects of urbanization. We cannot say as a matter of fact or law that a facility which constitutes an incompatible use of land dedicated for park and recreational purposes is nonetheless made compatible by adjunct facilities which may serve as recreational enhancements for the general public.

While the cases cited above make clear that the proposed lease would be inappropriate with respect to the use of the property for a school, our analysis would not be complete without an examination of several statutory schemes dealing with the use of park and recreational facilities. First, we note that the usual procedure for a subdivision developer to dedicate land for a park is pursuant to the terms of a local ordinance adopted under the Subdivision Map Act (Gov. Code, §§ 66410-66499.37).[2] Section 66477 provides:

"The legislative body of a city or county may, by ordinance, require the dedication of land or impose a requirement of the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a tentative map or parcel map, provided that:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The land, fees, or combination thereof are to be used only for the purpose of developing new or rehabilitating existing neighborhood or community park or recreational facilities to serve the subdivision."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Although the park in question was not dedicated for park purposes pursuant to a local ordinance, we find that the terms of section 66477 fully support our conclusion that a school building may not be constructed on the property.

---

[2] All undesignated section references hereafter are to the Government Code.

Under the Community Recreation Act (Ed. Code, §§ 10900-10914.5), public authorities including cities and school districts may collaborate to organize, promote, and conduct programs of community recreation. (Ed. Code, § 10905; 4 Ops.Cal.Atty.Gen. 368 (1944).) These programs may be conducted in "recreation centers" (Ed. Code, § 10901, subd. (f)), such as "playgrounds, . . . swimming pools, gymnasiums, . . . auditoriums, libraries, [and] parks adjacent to school sites . . . ," regardless of whether the place or facility may be used primarily for other purposes. Public authorities may "[a]cquire, construct, improve, maintain, and operate recreation centers within or without the territorial limits of the public authority." (Ed. Code, § 10902, subd. (c).) A school district may use its buildings and grounds for community recreation purposes and may grant the use of its buildings and grounds to other public authorities for the same purposes whenever such use will not interfere with the functions of the public school system. (Ed. Code, § 10910; 30 Ops.Cal.Atty.Gen. 291 (1957).) Education Code section 10904 provides:

> "A public authority may permit the use of a recreation center or facility by parent cooperative nursery groups on a nonexclusive and non discriminatory basis when such use does not unreasonably impair or interfere with the right of the public to use the center or facility. As used in this section, a `parent cooperative nursery group' means a group of parents who (1) are licensed by a state agency; (2) on a nonprofit basis; (3) to provide recreation for their preschool age children; (4) on a nondiscriminatory basis."

However, we do not find that this statutory scheme contemplates the use of public property already dedicated to recreational purposes for the construction of a facility, such as a school building, which would be used primarily for non-recreational purposes. Although the school classrooms could ultimately become the site of some recreation center activities, this source of recreation is too attenuated to be considered consistent with the original dedication of the property, particularly since private dedications of property are to be strictly construed.

Finally, it is to be observed that the Legislature has enacted three legislative schemes concerning the abandonment of park property: (1) sections 38400-38418 provide for the abandonment and sale of parks dedicated on the original town site map or plat; (2) sections 38440-38462 deal with the discontinuance and abandonment of parks dedicated by a city; and (3) sections 38501-38510 concern the abandonment and sale of parks on the basis of certain findings made by the municipality. We will examine the operative provisions of each of these statutory schemes in turn.[3]

Section 38403 states:

---

[3] Sections 37111 and 37111.1 also allow for alternative uses of park property, but they are applicable only to land which was originally *purchased* by the city for park or other purposes.

"The legislative body may abandon a park and sell the land comprising it pursuant to this article when:

"(a) A plat or map of a town site has been recorded in the county recorder's office purporting to dedicate land within the site as a public park.

"(b) The town site has thereafter become part of a city.

"(c) The legislative body finds that the land is not appropriate, convenient, or necessary for park purposes.

"(d) The original dedicator consents.

"(e) The legislative body has acquired an option to purchase other lands of at least equal area."

Section 38403 is predicated on the existence of a recorded plat or map of a *town site* which purports to dedicate the land within the site as a public park. The park in question was not dedicated by the subdivider as part of the development of a town site. We also observe that section 38403 contemplates the sale, rather than lease, of a park (see §§ 38415-38418), with the proceeds of the sale to be placed in a special fund to be used exclusively for the payment of damages and the purchase of other public grounds (§ 38418). That section 38403 is intended to apply only to the complete and permanent abandonment of park property is made further evident by subdivision (c) which calls for a legislative finding that "the land is not appropriate, convenient, or necessary for park purposes."

Under the second legislative scheme, "[a] city may discontinue and abandon the use as a public park of any land owned in fee by it and dedicated or placed in such use by such city, and thereafter dispose of the land, pursuant to this article." (§ 38440.) Here the city currently owns the land in fee and operates it as a park, but the city did not dedicate it to such use or place it in such use. The dedication was made by a private party and the land was placed in use as a park before the city came into existence.

Under the third legislative scheme, a city may abandon park property pursuant to the following terms of section 38501:

"The legislative body may abandon all or any portion of a park and sell the land comprising it pursuant to this article, if it finds that all or any portion of the purported park has not been used by the public for park purposes, that no consideration has been paid for the land except by the city, and that no public

funds have been expended to improve the land as a park, in either of the following situations:

"(a) When any land within the city limits has been dedicated for park purposes by the recording of a plat or map in the office of the county recorder, or otherwise.

"(b) When any such land has been purchased for park purposes and the legislative body finds that all or any portion of the land is not appropriate, convenient, or necessary for park purposes."

Although the situation specified in subdivision (a) of section 38501 is present here, the city would be unable to make the requisite findings that the "park has not been used by the public for park purposes" or "that no public funds have been expended to improve the land as a park."

We must therefore conclude that none of the three statutory schemes authorizing the abandonment of park property apply to the park in question.[4] Although the city and school district will effectively be denied any means of using this park as a site for a school building, such result is consistent with the strong public policy in this state of favoring the retention of park and recreational facilities. Not only is this policy evidenced by the rigorous procedures set forth in the statutory mechanisms for the abandonment of public parks, but also by the Public Park Preservation Act (Pub. Resources Code, §§ 5400-5409) which contains the following prohibition:

"No city, city and county, county, public district, or agency of the state, including any division, department or agency of the state government, or public utility, shall acquire (by purchase, exchange, condemnation, or otherwise) any real property, which property is in use as a public park at the time of such acquisition, for the purpose of utilizing such property for any nonpark purpose, unless the acquiring entity pays or transfers to the legislative body of the entity operating the park sufficient compensation or land, or both, as required by the provisions of this chapter to enable the operating entity to replace the park land and the facilities thereon." (Pub. Resources Code, § 5401, subd. (a).)

---

[4]The procedures outlined in the Government Code for the abandonment of park property are not binding on *charter* cities if they have provisions in their charters inconsistent with these general laws. (See *Wiley* v. *City of Berkeley* (1955) 136 Cal.App.2d 10; see also *Simons* v. *Los Angeles* (1976) 63 Cal.App.3d 455.)

Thus, even if the proposed lease of park property to the school district could be effectuated for purposes of constructing a school, the district would have to transfer to the city sufficient compensation or land to enable the "city to replace the park land and the facilities thereon."[5]

In summary, the land in question was offered for dedication by a private individual as part of the process of developing a subdivision, the dedication was accepted by the responsible public entity, and the land was placed in use for park and recreational purposes. It currently serves the subdivision, surrounding neighborhoods, and the community in general. Under these circumstances, a non-park use of the land would not be appropriate or authorized by case law or statute.

We conclude that a city may not lease a portion of land dedicated for park and recreational uses pursuant to a final subdivision map and developed for park uses to a school district for purposes of constructing a school, but may lease a portion of such land for other uses which are consistent with park and recreational purposes.

* * * * *

---

[5] The proposed 55-year lease might reasonably be considered an "acquisition" of real property for purposes of this statutory scheme.