HELEN CLAIRE BLANK, Respondent, *v.* JAMES J. BROWNE, as Park Commissioner of the Borough of Brooklyn, and Another, Appellants.    Second Department, June 25, 1926.

**Parks — taxpayer's action to restrain use of " Dreamland Park," Coney Island, for parking automobiles and purveying under agreement between defendants — agreement by park commissioner giving individual defendant concession to run said park for automobile parking purposes and purveying does not alienate city property in violation of Greater New York charter, § 71 —" Dreamland Park " is part of greater park — not illegal to use same for parking automobiles or to grant concession to individual — fact that other part of park is under jurisdiction of president of borough of Brooklyn does not change rule — improper to authorize purveying in park except as to gasoline.**

It was error for the court to grant an injunction *pendente lite* in an action by a taxpayer to restrain the defendants from using certain property at Coney Island commonly known as " Dreamland Park " for the parking of automobiles and purveying under an agreement between the park commissioner of the borough of Brooklyn and the individual defendant, which granted a concession to the individual defendant, since it appears that said park is a part of a greater park, that the parking of automobiles is a legitimate use of the park in view of present day conditions, and that the city reserved the right to annul the agreement at any time.

The agreement between the defendants does not operate to alienate city property in violation of Greater New York charter (§ 71) in view of the fact that the individual defendant may be ousted from the park and his concession canceled at any time by written notice.

The question was not presented whether or not the agreement constitutes a waste of public funds and the only question decided is that the agreement in itself is not an illegal exercise of power.

The fact that the remainder of the park is under the jurisdiction of the president of the borough of Brooklyn, while " Dreamland Park " is under the control of the park commissioner, does not change the rule.

It was improper to grant a concession to the individual defendant to sell refreshments and automobile accessories, for the sale of such things is not incidental to this park use. However, it was not illegal to grant the individual defendant the right to sell gasoline to automobilsts who use the park for parking purposes.

APPEAL by the defendants, James J. Browne and another, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 4th day of June, 1926, restraining them *pendente lite* from using the property at Coney Island commonly known as " Dreamland Park " for any of the purposes mentioned in an agreement between the defendants dated March 15, 1926.

*George H. Ward* [*George P. Nicholson, Corporation Counsel,* and *Joseph P. Reilly* with him on the brief], for the appellant Browne.

*Charles L. Craig,* for the appellant Shea.

*W. B. Roulstone ,William A. Blank* with him on the brief], for the respondent.

LAZANSKY, J. The action is brought by a taxpayer. Upon affidavits she has obtained the full relief which she may obtain after trial.

In 1915, by condemnation proceedings, the city of New York acquired title to this property for park purposes. It is said to contain fourteen acres and is described as follows: " Bounded by a line two hundred feet southerly from and parallel with Surf Avenue; West 5th Street; Atlantic Ocean; and a line one hundred and fifty feet westerly from and parallel with the center line of West 8th Street." It will be noted that the " park " is not adjacent to Surf avenue, the principal street of Coney Island, but is distant 200 feet from the southerly line thereof; and the westerly boundary of the park is distant 150 feet westerly from the center line of West Eighth street. There is, therefore, no access to the park from Surf avenue or West Eighth street. Between Surf avenue and the park there are a number of structures. It is claimed by the plaintiff that after acquirement the property was improved by the park department for the purposes of exercise and amusement; that certain concessions were maintained to afford additional facilities for the beneficial use of the park; and that from 1915 to 1923 many people availed themselves of the use of the park.

On the other hand, it is asserted by the defendant park commissioner that the property was used during the period just mentioned as a beach, and that no ornamentation, trees or benches of any description were provided by the department; that there was no park development of any kind and none was planned.

By chapter 506 of the Laws of 1918 the Commissioners of the Land Office were authorized to grant and release to the city of New York certain lands under water in the Atlantic Ocean in the boroughs of Brooklyn and Queens, to provide for the protection of adjacent uplands, the improvement of such lands under water and uplands and the acquisition of property for any such purpose by the city. The city of New York, by its board of estimate and apportionment, was authorized to lay out on the map or plan of the city along the ocean front of the two boroughs, a bulkhead line or lines at a distance not to exceed 500 feet outshore of the existing high-water line; and to lay out on said map or plan, along said ocean front interior to said bulkhead line or lines, streets,

40

*parks*, avenues, boulevards, promenades, walks and boardwalks. The city was authorized, either by purchase or condemnation, to acquire title to any uplands not owned by the city required for such streets, parks, etc. All such places were to be under the jurisdiction of the president of the borough in which the same may be situate. As a result of this cession by the State, and proceedings taken by the city, there was created a beach 500 feet wide. A boardwalk was erected which extends, at the present time, from Sea Gate, on the west, to Ocean Parkway, a boulevard leading from Prospect Park, on the east, a distance of at least two miles. It is being further extended. In 1923 the boardwalk was completed and the beach front opened to the public. The southerly boundary of "Dreamland Park" is now the northerly side of this public beach, and the access to and from the so-called 'Dreamland Park" is underneath the boardwalk. In July, 1922, there came before the board of estimate and apportionment of the city of New York an application by the then park commissioner of the borough of Brooklyn requesting an appropriation of $26,700 for the purpose of constructing a curbed concrete parking space at the rear of "Dreamland Park," varying in width from 50 to 165 feet, to be used for the purpose of parking automobiles. This sum of money was appropriated by the board of estimate and apportionment. Later, and in 1923, the board of estimate and apportionment was requested to and did authorize an appropriation of $125,000 for concreting the entire space occupied by "Dreamland Park." The board also authorized the creation of certain positions necessary for the maintenance of this property as a parking place at an annual expenditure of over $55,000. It thus appears that the city authorities at that time countenanced the use of this park for automobile parking purposes. From 1923 up to the time of the making of the agreement between the defendants which is the subject of this litigation, the entire property known as "Dreamland Park" was used as a place for the parking of automobiles, under the direct control of the park commissioner.

The defendant park commissioner said in his affidavits in opposition to this application that when he came into office, on the 1st day of January, 1926, he made an inspection of the locality and as a result of his own observation and reports made to him by his own engineers, he decided that this space was only available for parking cars and could not, without expense amounting to approximately $500,000, be made to resemble in any way the public's idea of what a park should be. He thereupon entered into the agreement complained of with his codefendant. By this agreement the park commissioner granted to his codefendant the privilege of

operating the Dreamland parking space for automobile parking, purveying and other operations incidental to such use, subject to the approval of the commissioner of parks, for the period of three years, from March 15, 1926, to March 14, 1929, for the sum of $32,500 for the first year, $35,000 for the second year, and $36,000 for the third year, payable in certain installments. Shea, the codefendant, was to keep the premises clean and satisfactory; pay all expenses of maintaining the same, including any structures contained therein, and provide all necessary appurtenances, heating or otherwise, for the operation of the structures and parking privilege. His rights were not deemed in any way to exclude park representatives from the property at any time, or the public from crossing the parking space to reach the water front, beach or boardwalk by way of established walks. He was required to make reports of all revenue received by him. The privilege was personal and could not be assigned. It was agreed that the permit, as it was called, might be canceled and annulled and the agreement terminated at any time by written notice from the commissioner. It was also provided in the instrument that the entire parking space should be under the control of the permittee, subject to the jurisdiction of the park commissioner. Shea was to be allowed to charge a fee of twenty-five cents for each car parked during week days, except Saturdays and holidays, for a continuous period of five hours, with an extra charge of twenty-five cents for any period over the said continuous five hours. The rate for Saturdays and holidays was twenty-five cents for the first two hours and twenty-five cents additional for any number of continuous hours thereafter. These rates were higher than those which had been charged by the city, but it may be assumed that they were intended to offset the expense which the city had incurred for employees and otherwise. Shea was also permitted to operate purveying privileges in certain parts of the premises. The structures for such use were to be furnished by Shea and were not to exceed thirteen in number. By " purveying " is meant that term in its general acceptation. He was also given permission to erect a gasoline station and auto accessory supply station upon the premises and, subject to the approval of the park commissioner, he could use the place for other activities, such as skating, etc. It was provided that Shea should not interfere in any way with the free use of the beach property fronting the park space nor with the boardwalk.

The plaintiff claims that the privileges and rights given to Shea under this agreement were illegally granted by the park commissioner. Although it is in general terms claimed by the plaintiff that the pecuniary arrangements were improvident, the injunction

was not granted on that basis.  In fact, there were not sufficient facts before the court to warrant a finding of waste of public funds. The park commissioner claims that the arrangement is fair and reasonable.  So the real inquiry here is whether or not the execution of this instrument by the park commissioner was an illegal official act.

Under this instrument, by whatever name it may be characterized, the city does not lose control of this property, for Shea may be ousted on a moment's notice.  There surely was no alienation of the city's property within the meaning of section 71 of the Greater New York Charter (Laws of 1901, chap. 466).

In *Perrin* v. *N. Y. Central R. R. Co.* (36 N. Y. 120, 124) the following appears: "A park is, in its strict sense, a piece of ground inclosed for purposes of pleasure, exercise, amusement or ornament." Since that time great changes have come over our affairs.  The population has increased tremendously and facilities for amusement have necessarily developed.  As incidental to opportunities for recreation and innocent amusement in public parks to-day, it is quite appropriate to furnish an opportunity for refreshment. As was said in *Gushee* v. *City of New York* (42 App. Div. 37, 41): " That in the control and management of the public parks of a great city it is perfectly proper to furnish not only such innocent amusements as may enhance the pleasure of those who resort to the parks, but such opportunities for rest and refreshment for themselves and their animals as may be required, will not be disputed."  That was written only twenty-seven years ago when the possibilities of the present day extensive use of the automobile were not dreamed of.  That this incidental use of parks is being made to-day without criticism or complaint every one knows. The management of the city's parks is a private venture of the city. The city must determine for itself whether these incidental facilities are to be operated by the city or for it by private persons.  (*Gushee* v. *City of New York, supra.*)  It has been the invariable practice of the city to hire out these concessions.  This practice has been countenanced for years without condemnation by local authorities or the courts.  Of course, it is the duty of a public officer to let out such concessions under terms which are fair and just; but with that question we are not now dealing.  It is urged that, although these incidental uses may be made of a park in connection with general park use, an entire park may not be devoted to that purpose.  We are in accord with that view, and were that the situation here we should be constrained to affirm the order granting the

injunction. But that is not the situation. " Dreamland Park," cut off as it is from use as a park, within the narrow definition of that term, by private ownership on its north and the boardwalk on the south, is really a part of a greater park, consisting of the great beach 500 feet wide, the boardwalk over the beach, and " Dreamland Park " itself. To use this place as a parking space for automobiles is an appropriate incidental use of the greater park of which " Dreamland Park " is a part. The use of the automobile has been developed with extraordinary rapidity until to-day, although comparatively speaking, it came into general use but a few years since, it is stated upon reliable authority that there is in this country, at the present time, one automobile for every five persons. To Coney Island, probably the greatest waterfront amusement place in the world, there come on a single fine summer day hundreds of thousands of people in automobiles. These people necessarily must find a place to park their automobiles so that they may have an opportunity to indulge in those amusements offered to them by public as well as private enterprise. The beach itself is used by hundreds of thousands on a single day. The extent to which the automobile has come into common use has been recognized by the Legislature by providing in the charter of the village of Peekskill that the board of trustees of the village may issue permits for placing tanks and containers for the storage of gasoline, kerosene or other oils within the bounds of a public highway and beneath the surface thereof and to permit arrangements for drawing therefrom upon the curbline of such street. (See *Matter of McCoy* v. *Apgar*, 241 N. Y. 71.) All over our city streets and public squares we find automobiles parked for long periods while their owners are away at distant points transacting their business. Public property is thus being used for private purposes. It is apparent that the use of the automobile requires a readjustment of the manner of the use of our city streets and places.

We, therefore, hold, in light of the physical relationship of the so-called " Dreamland Park " to the beach and the boardwalk, which, for all practical purposes, may be deemed a park, that the use of all the Dreamland property for the purpose of parking automobiles is a beneficial incident to the use of the greater park of which it is a part. The fact that the beach and the boardwalk are under the jurisdiction of the president of the borough of Brooklyn, and " Dreamland Park " is under the control of the park commissioner of the borough of Brooklyn, does not affect the situation. But we hold that the concessions for the purpose of purveying are not incidental park uses as far as " Dreamland Park " is concerned. In the immediate neighborhood there are many places

**630** PRAGER *v.* NEW JERSEY F. & P. G. INS. CO. Nos. 1 & 2.

First Department, June, 1926. [Vol. 217

where people who park their cars may procure refreshments. They are of ready access to such automobile owners. Those who park their cars in "Dreamland Park" do not do so for purposes of amusement in that place. We also hold that the sale of automobile accessories is not incidental to this park use. Places to procure such things are undoubtedly readily available in the neighborhood to those who may require them after they have parked their cars. As to the sale of gasoline, since it would be dangerous to permit gasoline to be carried through the streets, and as it frequently happens that an automobile operator unexpectedly "runs short" of gasoline, we are of the opinion that the sale of gasoline only, on these premises, to those who use them for parking purposes, is incidental to the use for those purposes.

Whether or not this document, by whatever name it may be called, is a waste of public property, and all other facts relevant to the issues, must await trial of the action.

The order granting plaintiff's motion for an injunction *pendente lite* should be reversed on the law and the facts, with ten dollars costs and disbursements, and the motion granted to the extent indicated.

KELLY, P. J., RICH, JAYCOX and KAPPER, JJ., concur.

Order granting injunction *pendente lite* reversed upon the law and the facts, with ten dollars costs and disbursements, and motion granted to extent indicated in opinion. Settle order on notice.