[L. A. No. 11272. In Bank.—May 31, 1929.]

R. A. WATTSON, Petitioner, v. ARTHUR ELDRIDGE et al., Respondents.

Arthur M. Ellis for Petitioner.

Hewitt, McCormick & Crump for Respondents.

Jess E. Stephens, City Attorney, Herman Mohr and William H. Neal, Deputies City Attorney and E. R. Young, *Amici Curiae* in Support of Respondents.

THE COURT.—This proceeding had its inception in the District Court of Appeal, Second Appellate District, Division Two, wherein petitioner sought the issuance of a writ of mandate to compel the respondents, as members of and constituting the board of public works of the city of Los Angeles, to execute a contract, duly awarded to petitioner under public bid, for the filling in and improving as surface streets certain areas or parcels of land theretofore used and employed as canals or artificial waterways. A prior proceeding instituted by the city of Venice was involved in *Schultz* v. *City of Venice,* 200 Cal. 50 [251 Pac. 913], but because of the technical defects in the record on appeal in that case the determination therein announced will not be deemed binding in the present proceeding. Before the return date of the alternative writ issued by the District Court of Appeal herein the parties stipulated as to certain facts material to the issues now presented and agreed upon the appointment, thereafter duly ordered, of a commissioner who was to receive evidence and report to the court his findings upon certain other material matters as to which the parties were unable to reach an understanding. In due time Mr. James H. Howard was appointed as such commissioner. Following a rather extended hearing the commissioner made and filed with the District Court of Appeal his findings of fact and report wherein he concluded, in substance, that the respondent board of public works was mistaken in its belief that the city of Los Angeles could not rightfully and properly fill in and improve as public streets all those certain strips or parcels of land designated in the ordinance of intention and theretofore used as canals. The commissioner's conclusion as to the propriety of the proposed improvement was based on his

finding "that said canals have been continuously used by the public as public waterways for all purposes of public ways for more than twenty years prior to the passage of the ordinance of intention . . . namely since about the year 1905, and the same constitute and are public streets in the city of Los Angeles." Having reached a conclusion opposed to that of the commissioner the District Court of Appeal declined to make the writ peremptory. A brief reference to the unique historical background of the lands with which we are herein dealing will materially assist in the solution of the principal question presented which has to do with the propriety of a proceeding instituted under the Street Improvement Act of 1911 [Stats. 1911, p. 730], and looking to the filling in and improving as surface streets certain areas theretofore used for canal purposes.

In the year 1905 the Abbot Kinney Company, a corporation, conceived the idea of creating a city to be known as "Venice of America," having a system of waterways and canals resembling those of the old world city. It thereupon set about reclaiming a tract of marsh-land lying along the coast line in the county of Los Angeles. The lands so reclaimed were subdivided and laid out in lots and blocks. Intercommunicating canals converging into an artificial lagoon and connected with the adjacent ocean ran through the tract. A map designating these lands as "Venice of America" tract was filed with the county recorder of the county of Los Angeles. There appeared on this map in the areas designated as canals the words "Not to be dedicated." The banks of the canals were cemented and strips of land adjacent thereto were planted with trees and shrubs and otherwise ornamented. In due time the lots into which the tract had been divided were sold largely to residential buyers who thereafter built and occupied residences thereon. On May 11, 1909, the Abbot Kinney Company conveyed to the city of Venice for sidewalks and parkways certain strips of land, approximately twelve feet in width, along each side of the several canals. ██ Thereafter and on May 20, 1912, it transferred and conveyed to said city, with but one exception, all of those certain areas or "lots" theretofore designated and used as canals. This latter instrument provides that "the premises herein conveyed shall be used by said second party and its successors

solely and only for permanent waterways, and canals, free to the public forever." Subsequently, and on March 10, 1925, the Abbot Kinney Company executed and delivered to the same grantee a deed purporting to convey "for public street purposes" the identical canal areas theretofore conveyed "solely and only for permanent waterways and canals." The respondents have urged throughout that this latter deed was and is ineffective for any purpose for the reason that the Abbot Kinney Company had by its 1912 deed completely divested itself of any interest it might theretofore have had in said canal areas. This conclusion of the respondents would seem to be unimpeachable for, as declared in *Slavich* v. *Hamilton*, 201 Cal. 299, 306 [257 Pac. 60, 63], "if the dedication of the property . . . was complete in the first instance, the property thereby became public property, and the owners lost all control over it. If the dedication was complete by their acts, whether express or implied, it was thereafter irrevocable by them, and the effect of such dedication cannot be qualified by any act or declaration thereafter made on their part. The property dedicated has become public property, impressed with the use for which it was dedicated." In our subsequent treatment of the subject we will, therefore, regard the dedication of these canal areas to the public use to have been complete and final as of the year 1912. At this point it should be stated that in the month of November, 1925, the city of Venice consolidated with the city of Los Angeles.

Among other things, the parties have stipulated "That at all times from the construction and opening of said canals in the Venice of America tract by the Abbot Kinney Company in the spring of 1905 until the conveyance of the same to the city of Venice in the month of May, 1912, the said company was in the possession of and exercised dominion over said canals, waterways and appurtenances, including bridges over the same, stairways, and landings, and over the walks and parkways along the sides, and banks thereof. That the sides of said canals were lined with concrete walks or banks, as were also said bridges, said stairway and landings. That said Abbot Kinney Company at all times during said period maintained said canals, waterways and appurtenances at its own cost and expense, and employed persons who attended to the care, upkeep,

superintendence and management of said canals, waterways and appurtenances.

"That during all of said time said canals, waterways and appurtenances were so kept and maintained open to the free use and enjoyment of the public generally and by the owners and occupants of lots and premises in said Venice of America tract and were so used and enjoyed openly and continuously and without interference or hindrance for boating, swimming, bathing and aquatic sports, amusement and recreation, and the said Abbot Kinney Company maintained and operated and the public used gondolas, canoes and other water craft in said canals and waterways for transportation along the same for the purpose of public pleasure and convenience and for the rental or use of which a charge was made.

"That upon the conveyance of said canals and waterways to the city of Venice, on or about the 20th day of May, 1912, the said city of Venice took possession thereof and the appurtenances pertaining thereto, and exercised dominion and control over the same in like manner as had theretofore been done by the said Abbot Kinney Company. That the said city of Venice at all times until its consolidation with the city of Los Angeles in the month of November, 1925, operated and maintained said canals and waterways at public cost and expense and out of the public funds of said city, and employed persons to, and who did superintend the operation of said canals and waterways and attend to the upkeep and maintenance thereof and appurtenances thereto, including said parkways and walkways along the banks or margins thereof. That at all times from the conveyance of said canals and waterways to the said city of Venice, as aforesaid, to the consolidation of said city with the city of Los Angeles, said canals, waterways and appurtenances were open to the free use of and were used by the public generally and by the owners and occupants of premises in said Venice of America tract openly and without interruption or interference for boating, bathing and swimming, and for purposes of pleasure and recreation, and also for transportation of household goods and supplies. That said canals and waterways were also used for transportation of passengers for hire in

launches, the operators of which paid licenses to the city of Venice."

█ In support of their position that the municipality is without authority to "divert" these canal areas to surface streets the respondents rely upon the universally accepted rule of law that land which has been dedicated to a definite and specific purpose must be used in conformity with the terms of the dedication and not diverted to any other purpose or use. (*Harter* v. *San Jose*, 141 Cal. 659 [75 Pac. 344]; *Archer* v. *Salinas City*, 93 Cal. 43, 51 [16 L. R. A. 145, 28 Pac. 839].) With this rule we have no quarrel. However, a dedication must be understood and construed with reference to its primary object and purpose. (*Godfrey* v. *City of Alton*, 12 Ill. 29 [52 Am. Dec. 476].) In *Hall* v. *Fairchild*, 66 Cal. App. 615, 624 [227 Pac. 649, 653], it is declared that "nothing is improper which conduces to that object." The real question always is, therefore, whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with such primary object. █ Whether or not a particular use amounts to a diversion from that for which the dedication was made depends on the circumstances of the dedication and the intention of the party making it. It has been held that such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. (*Spiers* v. *Los Angeles*, 150 Cal. 64, 68 [119 Am. St. Rep. 199, 11 Ann. Cas. 465, 8 L. R. A. (N. S.) 682, 87 Pac. 1026].) █ In other words, the dedicator is presumed to have intended the property to be used in such way by the public as will be most convenient and comfortable, and according to not only the proprieties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions.

█ While the several intercommunicating canals constructed in and through "Venice of America" were used as well for recreational purposes, they must of necessity, and because of the peculiar plan and construction of said city, be held to have been intended by the builder of that city to serve primarily as highways over which persons resident therein and the public generally might pass. In *Chicago etc. Ry.* v. *Minneapolis*, 232 U. S. 430, 442 [58 L. Ed. 671, 34 Sup. Ct. Rep. 400], the court concludes that an artificial waterway or

canal "is none the less a public highway, established to afford an appropriate place of public passage," and further along in its opinion quotes with approval the following: "The way sought to be established . . . a canal or waterway, with walks along each side was clearly a public way, subject to the rules governing public ways." There cannot, therefore, be any question but that a canal is a highway of a peculiar kind. (9 Cor. Jur. 1125, sec. 1.) The dedication of a highway to public use authorizes any ordinary use for highway purposes. With changing conditions of travel and use a city has the right to adapt and appropriate its highways from time to time to such uses as in its judgment would be most conducive to the public good, and the courts should be slow to interfere with the exercise of this discretion. (*Jones* v. *City of Houston* (Tex. Civ. App.), 188 S. W. 688, 689.) In our opinion, it would be most unreasonable to conclude that the Abbot Kinney Company by its dedication of the canal areas "for permanent waterways and canals free to the public forever" intended thereby to indelibly and irrevocably impress upon these lands a trust solely for canal purposes. A liberal interpretation and one more conducive to the public good, which the dedicator is presumed to have had in mind when making the dedication, warrants the conclusion that it was merely intended by the employment of the quoted language to secure to the public generally some manner or means of ingress and egress. When these canals were originally acquired by the City of Venice from the Abbot Kinney Company it may not have been actually contemplated by any of the parties to the acquisition and grant that they would be used for surface highways or streets, yet it may properly be said to have been within the legal contemplation of all that they were to be used for all purposes by which the object of their creation— as public highways or thoroughfares—could be promoted. It cannot reasonably be supposed that the dedicator intended otherwise than that they should respond to whatever demands, new improvements and increased facilities might make upon them, so only that such demands must always be consistent with their character and purpose as public highways. In our opinion, the filling in and improving of these canal areas as surface thoroughfares constitutes but a new adaptation of their original dedication to the ad-

vancement of public convenience—a more suitable and more economical enjoyment of them by the public as highways. The contemplated improvements would rather increase than diminish their fitness and convenience as public highways. We conclude, therefore, that the improvement of the canal areas as surface streets is fairly within the scope of the powers which it was reasonably contemplated the municipal authorities might exercise from time to time during the years subsequent to the original dedication for public purposes.

■ It is contended by the respondents that the owners of lots in the Venice of America tract have a special vested interest in the canals and waterways of which they can only be divested by proceedings in eminent domain. It is difficult to conclude what interest has been vested in these lot owners which might be subjected to monetary appraisal. These canals are artificial and have been artificially filled with sea water. Their construction had nothing to do with a natural watercourse. There is a well-defined distinction between the rights of property owners abutting on an artificially constructed canal built to carry the waters of a natural watercourse and the rights of those abutting on an artificial canal constructed to carry an artificial supply of water. Whatever might be the rights of the former, it is well established that the latter do not, merely by reason of their location geographically, acquire the right to have the artificial canal maintained and the flow of water therein continued. (See *Murchie* v. *Gates,* 78 Me. 300 [4 Atl. 698, 700]; 1 Wiel on Water Rights, 56.) If the lot owners possess the asserted right it is a right to require the canals maintained and filled with water to such an extent as to render them of some beneficial use as waterways. The asserted right would necessarily imply an obligation on the part of some agency, public or private, to continue perpetually such maintenance and supply. Such a right would ordinarily be founded in contract, express or implied. Here we find none. The Abbot Kinney Company did not contract to do so when it laid out the tract and sold the lots. Nor do we find such a contractual obligation on the part of the city as to such lot owners. Finally, the legislative body of the city has declared that the public convenience and necessity require that the canals be abandoned and as highways be transformed into streets for the uses with which public

highways are ordinarily improved, and we conclude that the abutting property owners have not such rights as may be successfully interposed to prevent the proposed improvement.

Nor do we find any particular merit in the contention touching asserted irregularities in the proceedings looking to the performance of the proposed work. In accordance with the requirements of the statute (Stats. 1923, p. 106) the ordinance of intention states in general terms the character of the work and the location of the proposed improvement and refers to the plans and specifications for a more detailed description thereof. That a storm drain is to be constructed on tide lands is not, in our opinion, fatal to the legality of the proceedings, for the authorities recognize the right of municipalities to extend necessary public improvements on to tide lands lying within their corporate boundaries. Since the institution of this proceeding the United States government has given its consent to the construction of the proposed storm drain.

Let a peremptory writ of mandate issue as prayed.