Cohen, Appellant, *v.* Samuel.

Argued April 10, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*William Cohen,* with him *Maxwell S. Rosenfeld,* for appellants.

*James A. Montgomery, Jr.* and *Herbert A. Barton,* with them *G. Coe Farrier,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1951:

This case is so obviously ruled by the decision of this Court in *Bernstein v. Pittsburgh*, 366 Pa. 200, 77 A. 2d 452, that comparatively little need be added to what was there said.

On November 10, 1949, the Commissioners of Fairmount Park in Philadelphia entered into a written agreement with Louis L. Rittenhouse, Inc., a Pennsylvania corporation, which holds a license under a patent for the operation of a structure and equipment for the playing of a form of golf. They leased to Rittenhouse a plot of ground approximately 13 acres in extent in the Park at 33rd and Oxford Streets, upon which Rittenhouse was to erect and operate a "compact" golf course,* lay out and maintain a parking lot, and erect such suitable buildings for the purpose of the operation as should be approved by the Commissioners. The latter reserved the right to require the lessee to reduce any admission, playing or parking fees, or any prices charged for refreshments, if in their opinion such fees or prices were unduly high and not in the public interest. It was also provided that the lessee would not operate any concessions which, in the opinion of the Commissioners, were objectionable or not proper uses of park property. The rental was to be a prescribed percentage of the gross receipts. The term of the agreement was one year, but subject to extension from year to year; if the Commissioners elected to terminate it at the end of any of the first four years the lessee was to be paid certain graded percentages of the cost of constructing the golf course,

---

* A "compact" golf course permits the playing of a game somewhat resembling golf in a restricted area. Instead of the player walking from hole to hole he drives from tees located close together on one edge of the course toward real or pretended holes in the fairway; after driving, he putts on greens located immediately adjacent to the tees.

parking lot, buildings and improvements; at the end of the fifth year the Commissioners could terminate the lease without making any payment whatever and thereupon the golf course, and all buildings and improvements on the leased premises, were to become the sole and absolute property of the Commissioners and the patent license or franchise for the golf course was to be transferred to them.

Plaintiffs are taxpayers who own properties situate in the vicinity of 33rd and Oxford Streets. They filed a bill in equity to enjoin the Commissioners and Rittenhouse from operating the golf course on the 13 acres or erecting any buildings or structures thereon, and to have the lease declared invalid on the ground that the Commissioners had no authority to enter into it. Preliminary objections were filed by defendants, which the court below sustained and dismissed the bill.

Beautiful Fairmount Park, approximately 4000 acres in size, deservedly the pride and one of the glories of the City of Philadelphia, owes its origin to the Act of March 26, 1867, P. L. 547, which provided that the area of ground there described should be "vested in the city of Philadelphia, to be laid out and maintained forever as an open public place and park, for the health and enjoyment of the people of said city, . . ." There were established park commissioners who were empowered to adopt a plan for the improvement and maintenance of the park, and they were vested with the power and the duty of its care and management. By the Act of April 14, 1868, P. L. 1083, they were given exclusive power to lease from year to year all buildings within the park limits which might be let without prejudice to the interests and purposes of the park, and were again empowered to govern, manage and lay out and ornament the park and to construct all proper buildings and other improvements therein. By the Act of March

16, 1870, P. L. 451, the city was to maintain and keep open the park for the free use and enjoyment of all the citizens of the state.

It is thus abundantly clear that the Commissioners were vested expressly, or by necessary inference, with all the powers needed, and commonly employed, to manage and improve a park and construct all proper buildings and improvements therein adapted to promote the use of "an open public place and park for the health and enjoyment of the people." What buildings and activities may properly be installed and conducted in a public park? In *Laird v. Pittsburg*, 205 Pa. 1, 5, 6, 54 A. 324, 325, it was said that "A public park in the popularly accepted meaning of the present time may be comprehensively defined as a public pleasure ground," and that public parks have come to be recognized as a natural place for various agencies of aesthetic enjoyment and for outdoor athletics. In *New Castle v. Lawrence County*, 353 Pa. 175, 182, 44 A. 2d 589, 593, where certain concession buildings were let on short term leases or licenses, it was said that "These buildings are part of the park equipment available for the entertainment and refreshment of the public visiting the park and promote and facilitate the enjoyment of the park for park purposes", that there was no reason "why park visitors who desire refreshment or special entertainment should not pay reasonable charges for such additional park privileges" and that "If the city directly, instead of by licensees, furnished these benefits it could make a reasonable charge therefor. As it acts in a proprietary capacity, it is immaterial that it finds it more convenient to supply refreshment and entertainment by its licensees." In pursuance of these authorities we held in *Bernstein v. Pittsburgh*, 366 Pa. 200, 77 A. 2d 452, that the City of Pittsburgh might lawfully erect an auditorium in its own Schenley Park and lease it to a corporation for the presentation by the latter of light

operas for which substantial admission charges were to be exacted.

What, if any, are the differences between what was permitted in the *Bernstein* case and what is here challenged? There as here, about 14 acres of ground were involved although Schenley Park as a whole is much smaller than Fairmount Park; there the lease was for 10 years for the summer periods, here only for 5 years, or even less if the Commissioners wish at the end of any year to recapture the leased property; there the operating company was permitted to charge admission fees without any return to the city whereas here the city is to receive what may amount to a substantial rental. Plaintiffs contend that the two situations are not parallel in that in Pittsburgh the operating company was a non-profit corporation, whereas Rittenhouse is a business concern. That, however, is a difference here of no legal significance, for to the Commissioners and the public generally it cannot be a matter of concern that the lessee might make an excessive profit in view of the fact that the Commissioners have reserved the power to control the charges to be paid by those who patronize the concession. Incidentally, there are, and long have been, other licensees, operating refreshment stands and other concessions in the park, who are in business for profit. The fact that in the Bernstein case the lease was for the presentation of light opera,— affording mental and emotional entertainment,—while here it is for the purpose of enabling those who find pleasure in playing a kind of truncated golf to obtain thereby physical recreation, is likewise a difference without any basis for a legal distinction, for each of these methods of enjoyment has its devotees who find amusement therein (de gustibus non est disputandum) and each therefore has a legitimate place in a public park.

The final contention of plaintiffs is that, if the Commissioners are permitted to lease out a concession as

in the present instance, they could conceivably cover the entire park, in the same manner, with such a number of physical, mental and aesthetic recreational activities that little would be left of the park's open spaces and natural beauties, and its main purpose as a place in which to enjoy fresh air, grass, trees, shrubbery and flowers would be destroyed. Such an apprehension is obviously baseless, both because it is wholly unlikely that the Commissioners would act so unwisely, and also because a power may lawfully exist and yet be limited in the extent to which it may properly be exercised. The law is realistic, and its problems frequently involve questions of degree rather than of kind.

Decree affirmed at appellants' costs.