53 Cal.2d 52 (1959)
346 P.2d 385
ABBOT KINNEY COMPANY (a Corporation) et al., Plaintiffs and Appellants,
v.
CITY OF LOS ANGELES, Defendant and Appellant.
Docket No. L.A. 25166.
Supreme Court of California. In Bank.
November 17, 1959.
*53 Paul R. Hutchinson and Davis & Davis for Plaintiffs and Appellants.
O'Melveny & Myers, Pierce Works and Robert B. Krueger as Amici Curiae on behalf of Plaintiffs and Appellants.
*54 Roger Arnebergh, City Attorney, Bourke Jones and Ralph J. Eubanks, Assistant City Attorneys, for Defendants and Appellants.
Stanley Mosk, Attorney General, Jay L. Shavelson and S. Clark Moore, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Appellants.
SPENCE, J.
Plaintiffs brought this action to quiet title to certain property in Venice, and recovered judgment. Defendant's motion for a new trial was granted. Plaintiffs appeal from the order granting a new trial. Defendant appeals from the original judgment.
In 1904 four men  Abbot Kinney, A.R. Fraser, G.M. Jones, and H.R. Gage  owned most of the area along the shore of Santa Monica Bay. The four associates, seeking to promote and develop their properties as a beach resort, conveyed to the city of Ocean Park (which in 1911 changed its name to Venice and in 1925 was consolidated with the city of Los Angeles) 15 contiguous fractional lots fronting on the beach.
The lots were conveyed to the city: "To Have and To Hold ... in the hereinafter named trust, forever, as a pleasure park or beach for the use, benefit and enjoyment of the public in general and particularly the inhabitants of said City and the owners of the property lying adjacent to the property hereinbefore described; provided, that this conveyance is made upon the condition that no house or houses or building of any kind or character, or miniature, steam, street, or electric railway or roadway, or any gas, water or sewer pipe shall ever be erected, constructed, laid, maintained or operated, or be permitted or allowed to be erected, constructed, laid, maintained, or operated, in, along, upon or over said lands or any part thereof; and that no games of any kind shall ever be permitted to be conducted or carried on upon said lands or any part thereof, and said lands and every part thereof must at all times be kept free from teaming, open and unobstructed for the use and enjoyment of the public and as a pleasure park or beach, and said property shall be kept clean at said City's expense.
"Provided, further, that if said party of the second part or its successors or assigns shall at any time violate said trust or at any time, either directly or indirectly, violate either or any of the conditions or restrictions hereinbefore contained, *55 immediately thereupon, all right and title hereby conveyed shall revert to and become vested in the said parties of the first part, their heirs or assigns, and said parties of the first part, their heirs, administrators or assigns shall be entitled to immediate possession of said lands and every part thereof."
In 1954 the city of Los Angeles constructed a public parking lot by paving a portion of the beach at Venice. Sanitary facilities and other small structures were also installed on the beach. Plaintiffs, who claim to derive title to the reversionary interest from Kinney and his associates, brought this action contending that title to the property had reverted for breach of the conditions in the deed. At the trial, both sides relied on a composite map, designated Exhibit J, which indicates that in 1954, when the parking lot was constructed, the mean high tide line was more than 400 feet to the west of the 1902 high tide line. According to the map, the parking lot is located partly on upland included in the 1904 grant and partly on alluvial land to the west.
Between 1876 and 1926 a number of piers, breakwaters, groins, jetties and other structures were erected in Santa Monica Bay. These structures interfered to some extent with the littoral drift of sand-bearing water along the shore and caused this water to deposit its sand along the beach. In 1946 the cities of Los Angeles and Santa Monica began placing artificial fill on the beach. Plaintiffs concede that all accretions seaward of the 1946 mean high tide line shown on the map are artificial and make no claim thereto, but they argue that the alluvion from the 1904 line to the 1946 line is subject to the conditions of the deed.
At the trial, plaintiffs presented expert testimony to the effect that all alluvion deposited on the beach before 1946 was natural accretion. Defendant presented expert testimony to the effect that the accretion was artificial or, at least, that the accretion, having been caused by the interference with the natural currents by man-made structures, was the result of artificial and natural causes. Defendant's witness testified that before these structures were erected the beach was in a state of equilibrium, in that the littoral currents would wash away as much sand as they deposited there.
Defendant also introduced expert testimony to the effect that the use of a particular beach by the public depends in large part on the availability of adequate parking space. This witness testified that prior to 1954 the subject beach had not *56 been well attended but that attendance had greatly increased since the opening of the parking lot.
At no time was the state a party to these proceedings.
The trial court found that defendant's construction and operation of the parking lot, restrooms, and other small structures constituted violations of the conditions of the 1904 deed. The court further found that the parking lot had been constructed in part on the land conveyed in 1904; that Kinney and his associates owned to the mean high tide line; that until 1946 the beach had been built up by natural accretion, which included the remainder of the area on which the parking lot had been located; and that plaintiffs, by reason of defendant's violation of the conditions, were the owners of the land upon which the parking lot was constructed. Judgment was entered accordingly.
The judge who tried the case retired and defendant's motion for a new trial was heard by another judge. A new trial was granted on the basis of errors of law and insufficiency of the evidence. When the District Court of Appeal filed its opinion on this appeal, the attorney general became aware of the existence of this litigation. The attorney general filed an amicus curiae brief requesting a hearing, contending that plaintiffs had failed to join the state as a necessary party and that the trial court therefore lacked jurisdiction.
We have concluded that the attorney general's contention is meritorious, and that the order granting a new trial must accordingly be affirmed. Section 6308 of the Public Resources Code provides, in part, that "Whenever an action or proceeding is commenced against a county, city, or other political subdivision or agency of the State involving the title to or boundaries of tidelands or submerged lands that have been or may hereafter be granted to it in trust by the Legislature, the State of California shall be joined as a necessary party defendant in such action or proceeding."
[1a] The state challenges the validity and extent of the plaintiffs' claim to lands which were tidelands when plaintiffs' predecessors acquired title under a Mexican grant. The state further claims that the existence of accretions in this case cannot displace the rights of the state to what were originally tidelands. The present action therefore clearly involves the title to and boundaries of tidelands within the meaning of section 6308.
Section 6308 requires a "grant" by the state to the city, and plaintiffs contend that because the action does not involve *57 tidelands granted to the city in trust by the Legislature, section 6308 does not apply. In 1917 the state conveyed to the city of Venice the tidelands and submerged lands within the city's boundaries, in trust for the promotion of commerce and navigation. (Stat. 1917, ch. 77, pp. 89-90.) The legislation granting these lands provided, however, that "nothing contained herein shall in any way affect any property held or claimed under, through or from a Mexican grant or patent therefor within the present boundaries and jurisdiction of said city, and situated below the line of mean high tide of the Pacific Ocean, or of any harbor, estuary, bay, or inlet within said boundaries."
Plaintiffs argue that since the property was held and claimed under a Mexican grant, the Legislature in 1917 did not grant the land to the city; that since the Legislature did not grant the land, section 6308 cannot apply and plaintiffs were not required to join the state as a party defendant. The state, on the other hand, argues that plaintiffs did not obtain the tidelands under the Mexican grant, and that the state did grant the land to the city in 1917; that since the state granted the land to the city, plaintiffs were required by section 6308 to join the state as party defendant. An examination of these arguments demonstrates that under each, the applicability of section 6308 can be determined only after the ultimate question whether the state had title which it could grant has been decided. [2] We cannot construe section 6308 to require, as a condition to the necessary joinder of the state, that the state must have granted good title. Nor should we construe the statute to allow the city but not the state to be bound by findings made in an action to which the state had not been joined. To do either would be to permit a claimant to establish his claim without joining the state where, had the state been joined, the state might have been able to defeat the claim. Such a result would frustrate the basic purpose of section 6308. [1b] Since it is no great burden to require a plaintiff to join the state, we hold that where the state has attempted to grant tidelands to a city and where there is an action involving the title to or boundaries of such tidelands, section 6308 requires that the state be joined as a party. In any event, nothing in the record supports the plaintiffs' major premise that the Mexican grant included lands seaward of the mean high tide line. [3] Absent a showing to the contrary, the upland owner obtains title only to the high water mark. (Civ. Code, § 830; City of Los Angeles v. San Pedro etc. R.R. *58 Co., 182 Cal. 652, 654-655 [189 P. 449].) [4] Furthermore the tract maps filed as exhibits in the present case show the westerly boundaries of the tracts as "Ocean," and this implies the mean high tide line as the boundary. (See Strand Improvement Co. v. City of Long Beach, 173 Cal. 765, 770 [161 P. 975].)
[5] Plaintiffs apparently urge that the 1917 statute does not purport to grant property to the city if the property is claimed, regardless of the validity of the claim, under a Mexican grant. However, the proviso in the 1917 statute could not have been intended to validate otherwise invalid claims. Nor is there reason to believe it was intended to affect the procedures by which the state can claim title to or seek to establish the boundaries of tidelands. Therefore, we do not construe the 1917 statute as dispensing with the requirement that the state be joined in this action.
[6] The question remains whether the trial court had jurisdiction to proceed without the joinder of the state. Section 389 of the Code of Civil Procedure was amended in 1957 to distinguish between "indispensable" parties and "conditionally necessary" parties. It provides that "[a] person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be inequitably affected or jeopardized by a judgment rendered between the parties." (See also Bowles v. Superior Court, 44 Cal.2d 574, 583 [283 P.2d 704]; Bank of California v. Superior Court, 16 Cal.2d 516, 525-526 [106 P.2d 879].) The enactment of section 6308 clearly demonstrates that the Legislature recognized that the state's important interest in preserving and enforcing the trust in the tidelands (see Mallon v. City of Long Beach, 44 Cal.2d 199, 209 [282 P.2d 481]) required that the state be represented in any action against a city involving the character or boundaries of such tidelands. We therefore conclude that the Legislature intended that the state should be an indispensable party to any such action, and that its presence should be a condition of the court's jurisdiction. However, the jurisdictional defect may readily be cured on the new trial heretofore granted by the trial court. (Code Civ. Proc., § 389; 2 Witkin, California Procedure (1954), 1066.)
Since the evidence to be presented and the findings of fact to be made on the new trial with the state as a party may differ materially from the evidence which was presented and *59 the findings which were made on the trial heretofore had, we do not deem it necessary or appropriate to pass upon the other contentions raised by the parties concerning the propriety of the order granting the new trial.
The order granting a new trial is affirmed, with directions to the trial court to order plaintiffs to join the State of California as a party defendant. Defendant's appeal from the judgment is dismissed as moot.
Gibson, C.J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.
The petition of plaintiffs and appellants for a rehearing was denied December 16, 1959.