[Civ. No. 27200. Second Dist., Div. Four. Dec. 20, 1963.]

ABBOT KINNEY COMPANY et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Paul R. Hutchinson, Davis & Davis and James A. Irwin for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Weldon L. Weber, Assistant City Attorneys, Edward C. Farrell, Deputy City Attorney, Stanley Mosk, Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Defendants and Respondents.

BURKE, P. J.—Plaintiffs brought this action to quiet title to certain beach property fronting on the Pacific Ocean in the Santa Monica Bay area, contending that conditions contained in the deed through which the City of Los Angeles (City) acquired title had been violated by the City, resulting in a reversion of the property to the plaintiffs as successors of the original grantors. Upon a trial of the action by the court sitting without a jury, judgment was rendered in favor of the City, from which judgment plaintiffs appeal.

The original grantors of the property were land developers who owned most of the area along the shore of Santa Monica Bay. In 1904, they deeded the subject property to be used as a "pleasure park or beach" upon certain conditions expressed in the grant, any violations of which would cause a reversion to grantors. The language of that deed, and of the conditions herein involved, was as follows: "To have and to Hold, ... the hereinafter named trust, forever, as a pleasure park or beach for the use, benefit and enjoyment of the public in general and particularly the inhabitants of said City and the owners of the property lying adjacent to the property hereinbefore described; provided, that this conveyance is made upon the condition that no house or houses or buildings of any kind or character, or miniature, steam, street, or electric railway or roadway, or any gas, water or sewer pipe shall ever be erected, constructed, laid, maintained or operated, or be permitted or allowed to be erected, constructed, laid, maintained, or operated, in, along, upon or over said lands or any part thereof; and that no games of any kind shall ever be permitted to be conducted or carried on upon said lands or any part thereof, and said lands and every part thereof must at all times be kept free from teaming, open and unobstructed, for the use and enjoyment of the public and as a pleasure park or beach, and said property shall be kept clean at said City's expense.

"Provided, further, that if said party of the second part or its successors or assigns shall at any time violate said trust or at any time, either directly or indirectly, violate either or any of the conditions or restrictions hereinbefore contained, immediately thereupon, all right and title hereby conveyed shall revert to and become vested in the said parties of the first part, their heirs or assigns, and said parties of the first part, their heirs, administrators or assigns shall be entitled to immediate possession of said lands and every part thereof."

In 1954, the City, after proceedings hereinafter discussed, constructed an auto park on a portion of the property covered by this deed and also constructed a comfort station and a gateway structure on land which either lay within the bounds of the deed or within the limits of a portion of the beach area dedicated for street purposes. Plaintiffs assert that these actions violated the conditions as above set forth and, pursuant to the last paragraph of the deed above quoted, resulted in a reversion of the area to them as successors of the grantors.

In 1958, trial was had on the complaint, resulting in a judgment quieting title in plaintiffs to that portion of the area granted on which the auto park was constructed. One issue at that trial was the title to the portion of the beach which had been created by accretion since 1904. The State of California had not been made a party to the original action.

Following the judgment, the City sought a new trial, which was granted on the grounds of insufficiency of evidence and errors of law occurring at the trial. Plaintiffs appealed from such order and the City appealed from the judgment. The District Court of Appeal affirmed the order granting a new trial. The Attorney General, as an amicus curiae, requested a hearing in the Supreme Court, claiming that the State of California was a necessary party to the action pursuant to section 6308 of the Public Resources Code. The order granting a new trial was affirmed by the Supreme Court with directions to the trial court to order plaintiffs to join the State of California as a party defendant. (*Abbot Kinney Co.* v. *City of Los Angeles*, 53 Cal.2d 52 [346 P.2d 385].) The state was thereupon named a party defendant by amended complaint.

On the new trial, the issue of violation of the conditions of the original grant was first determined; the issue regarding the alluvion was deferred and, because of the outcome of the

trial on the first issue, no trial was had on that issue. The court found that no violations of the original grant had occurred and rendered judgment for the City, from which judgment plaintiffs appeal.

In 1904, the time of the above grant, the property inland from the subject beach property was devoted primarily to beach homes; a bathhouse was constructed at the northerly end of the public beach and Fraser's Million Dollar Pier for amusement purposes was constructed next to the bathhouse. A second pier (Venice) and bathhouse were constructed to the south of the subject property. The famous "canals," simulating Venice, Italy, were located inland from the Venice pier. Transportation to and from the beach was furnished mainly by Pacific Electric Railroad cars, horse cars, bicycles and horse-drawn vehicles. The automobile was a rarity.

From 1904 to 1954 great changes occurred, both in the physical development of the area and in the customs of the public using the beach. The original grantors died. The canals fell into disuse, became inoperative, and, with judicial approval, many were filled, paved and became public streets. The Million Dollar Pier became obsolescent. Beach homes were replaced by shops, poultry, fruit, grocery and liquor stores. Commercial and rental units were constructed. The Ocean Park bathhouse was demolished and replaced in part by "Bridgo" (game) parlors. The Pacific Electric Railroad ceased to function and the automobile became almost the exclusive means of public transport.

In 1952, the area was in decline and badly in need of rehabilitation. A survey was made by the Department of Recreation and Parks of the City, which survey reflected the inadequacy of automobile parking space to accommodate the local residents and business firms, not to speak of the thousands who came by automobile to frequent the beachfront. The board of recreation and park commissioners, after securing a legal opinion from the city attorney approving the legality of the proposed improvement, approved the construction of a parking facility on a portion of the subject property. The improvements were built and completed on or about July 2, 1954, and have served the public since that date. The automobile parking area occupies about 7 per cent of the total area of the subject property.

Upon a trial of the issues, the court found that "... the primary purpose of the dedication ... was to have said beach used by and open to the public for all time"; and "... that

the development of the parking area was a reasonable development in order that said lands be available to and used by the public for pleasure park or beach purposes." In addition, the court found that ". . . the installation of this parking area upon a small portion of the total beach area . . . was necessary to carry out the primary purpose and intent of the four grantors in deeding [the property to the city] "; and that ". . . the absence of the parking area would tend to defeat the purpose of the grant rather than the presence of it interfering with, or being contrary to the purpose of the gift." Therefore, the court concluded, the construction and operation of said parking facility ". . . does not violate any of the conditions which the grantors attached to their deed."

The court's factual determinations have substantial support in the evidence and cannot be disturbed on this appeal; the only question before us is the proper construction of the language of the grant and the validity of the court's conclusions of law that the improvements placed on the property did not constitute violations of the conditions of the deed.

In determining the answer to this question we must have in mind well established rules of construction. With the exception of any reservation included therein, a grant is to be interpreted in favor of the grantee. (Civ. Code, § 1069; *Basin Oil Co.* v. *City of Inglewood*, 125 Cal.App.2d 661, 666 [271 P.2d 73].) If several parts of a grant are absolutely irreconcilable. the former part prevails. (Civ. Code, § 1070.) A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it was created. (Civ. Code, § 1442.) Generally speaking, grants are to be interpreted in like manner with contracts. (Civ. Code, § 1066.) It follows that, in cases of uncertainty, the language of a grant, like that of a contract, should be interpreted most strictly against the party who caused the uncertainty to exist. (Civ. Code, § 1654.)

In applying these rules, we note that preceding the express conditions contained in the grant, the purpose of the grant is clearly set forth in the granting clause ". . . as a pleasure park or beach for the use, benefit and enjoyment of the public in general and particularly the inhabitants of said City and the owners of the property lying adjacent to the property hereinbefore described; . . ." The conditions of the grant then follow this recitation of purpose.

With respect to the comfort station and gateway, the trial court found, on adequate evidence, that they were not erected

on land covered by the deed herein involved but on land, or on accretion of land, originally dedicated for street purpose by other documents. Therefore, the land on which these structures are located is not subject to the conditions of the deed above quoted and need not concern us further.

We must first determine whether the use of a small portion of the subject property for an auto park is violative of the above quoted statement of purpose of the grant. In construing such a grant, the courts have upheld the use of portions of property for purposes that are incidental to its use as a public park. (*Vale* v. *City of San Bernardino,* 109 Cal.App. 102, 106 [292 P. 689].)

In *Blank* v. *Browne,* 217 App. Div. 624 [216 N.Y.S. 664], an early New York case, the legality of using a portion of a public beach for the parking of automobiles was an issue and the court said at page 669: "We therefore hold, in light of the physical relationship of the so-called Dreamland Park to the beach and the boardwalk, which, for all practical purposes, may be deemed a park, that the use of all the Dreamland property for the purpose of parking automobiles is a beneficial incident to the use of the greater park of which it is a part. . . ."

In a recent New York case on the subject, *Pansmith* v. *Incorporated Village of Island Park,* 72 N.Y.S.2d 575, the court stated, at page 578: ". . . While there is no specific mention of a parking field therein, in these days when the public uses automobiles to reach the various beaches, it is felt that a parking field is a necessary adjunct of a beach."

In *Hanna* v. *Sunrise Recreation, Inc.* (Fla.) 94 So.2d 597, construing a conditional deed to the state for "state park purposes only", the court quoted as follows from *McLauthlin* v. *City & County of Denver,* 131 Colo. 222 [280 P.2d 1103, 1106]: " 'In this jurisdiction we have adopted the modern concept for a dedicated public park. . . . These uses would include tennis courts, . . . dancing facilities, . . . car parking facilities for the use and convenience of patrons and the public; . . .' "

In *Nichols* v. *City of Rock Island,* 3 Ill.2d 531 [121 N.E.2d 799], injunctive relief against a parking lot was refused, the court stating, at page 802 [121 N.E.2d]: ". . . Likewise, we are of the opinion that the building of the swimming pool, bathhouse, and parking lot would also add to the enjoyment of the park property and that such use would not be in violation of the restrictions contained in the deed, but in fact

would be in furtherance of the intention manifested by the donor at the time of the dedication of the park." The same general rule is announced in *City of Bangor* v. *Merrill Trust Co.*, 149 Me. 160 [99 A.2d 298]; *Cohen* v. *Samuel*, 367 Pa. 268 [80 A.2d 732]; *Bernstein* v. *City of Pittsburgh*, 366 Pa. 200 [77 A.2d 452]; and *City of Cleveland* v. *Lausche*, 71 Ohio App. 273 [49 N.E.2d 207].

The cases cited and relied upon by appellants to support their proposition that a reversion took place as a matter of law are inapplicable to the instant case. *Thornton* v. *Middletown Educational Corp.*, 21 Cal.App.2d 707 [70 P.2d 234], concerned a case where property was conveyed upon condition that a military academy be built upon the land. It was never built and consequently title was properly quieted to the successor in interest to the grantor.

A similar situation prevailed in *Liebrand* v. *Otto*, 56 Cal. 242, where the railway depot was never built, and *Parry* v. *Berkeley Hall School Foundation*, 10 Cal.2d 422 [74 P.2d 738, 114 A.L.R. 562], where the condition was that the property not be used for the purpose of selling intoxicating liquors. Upon being so used, a reversion was accordingly adjudged. Similarly, in *Johnston* v. *City of Los Angeles*, 176 Cal. 479 [168 P. 1047], the condition was that the grantee maintain a dam and reservoir upon the property. Upon abandonment of the property by the city for such purposes a reversion resulted.

In *Roberts* v. *Palos Verdes Estates*, 93 Cal.App.2d 545 [209 P.2d 7], the city commenced to construct a housing yard for vehicles other than those utilized for the maintenance of the park. On appeal the court held that, unless the buildings directly contributed to the use and enjoyment of the property, which had been deeded for park purposes exclusively, there would be a violation of the deed. There the city sought to use a portion of the property for maintenance purposes of property other than the park itself. Here, the auto parking facility is a necessary adjunct to the use and enjoyment of the beach as so expressly found by the court. Other cases cited by appellants are likewise not in point.

We hold the construction of the parking area is not inconsistent with or violative of the basic purpose of the grant and turn to consider whether or not such a parking facility violated any of the conditions which follow the statement of general purpose. The parking lot was found by the court not to obstruct any view or otherwise violate the re-

quirement that the area be kept "open." Plaintiffs appear to suggest that there was a condition against streets and roadways. But the pertinent language only prohibits any "miniature, steam, street, or electric railway or roadway." No such violation has occurred. ▪ The only condition seriously in question is the prohibition against "teaming." Plaintiffs urge that this term should be read as including all forms of transportation which modern technology has substituted for the horse and buggy of 1904. The trial court considered this argument and rejected it, specifically finding that the word "teaming," as used in the deed, referred only to the use of horses to draw vehicles, particularly commercial vehicles. Since this construction is reasonable, and since it applies the rule that a condition should be construed strictly against the grantor (Civ. Code, § 1442) it is binding on us. Even if the word were to be interpreted as appellants contend, in the light of the tremendous change which has taken place in the mode of public transportation, the use of a portion of the property for the purpose of parking vehicles would not violate the general purpose of the grant.

▪ "The doctrine is everywhere to the effect that such conditions in the dedication are repugnant to the grant and, therefore, void, leaving the grant in full and unrestricted operation." (*Wills* v. *City of Los Angeles*, 209 Cal. 448, 451 [287 P. 962, 69 A.L.R. 1044].) The principle announced in section 1441 of the Civil Code seems applicable here: "A condition in a contract, the fulfillment of which is impossible or unlawful, within the meaning of the Article on the Object of Contracts, or which is repugnant to the nature of the interest created by the contract, is void."

▪ We conclude that the primary purpose of a dedication should dictate the interpretation accorded the grant. Changing conditions, in customs, usages and improvements, must be deemed to have been contemplated by the grantor. (*Wattson* v. *Eldridge*, 207 Cal. 314, 320, 321 [278 P. 236].)

It is interesting to note that the rule enunciated in *Wattson* v. *Eldridge, supra,* resulted from the action of the City of Los Angeles in converting "canals and waterways" to public streets. In 1912 the Abbot Kinney Company, one of the very plaintiffs in the within action, transferred and conveyed waterways and canals in the "Venice of America" area upon the condition that "the premises herein conveyed shall be used by said second party and its successors *solely and only for permanent waterways and canals, free to the*

*public forever."* (Italics added.) The action involved a more drastic change from the specific purpose indicated in the grant than that involved in the present action; yet, because of the great change in conditions that had occurred between the time of the grant and the conversion of canals to public streets, the court was constrained to interpret the grant to be permissive of an adaptation that would be a practical fulfillment of the expressed purpose.

 Accordingly, as a matter both of fact and of law, no violations have occurred on the part of defendant City that effect a reversion of title to plaintiffs.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 10, 1964, and appellants' petition for a hearing by the Supreme Court was denied February 5, 1964.